Emile A. WILLIAMS, Plaintiff-Appellant,

v.

McALLISTER BROTHERS INC.,
Defendant-Appellee.

No. 311, Docket 75-7209.

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1975.

Decided April 6, 1976.

F. L. Wertheimer, New York City, for plaintiff-appellant.

Bruce A. McAllister, New York City (Edward J. Miller, Healy & Baillie, New York City, of counsel), for defendant-appellee.

Before MULLIGAN, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Emile A. Williams appeals from an order of the District Court for the Southern District of New York, Charles E. Stewart, Jr., *Judge,* granting defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. On appeal Williams contends that the trial court improperly granted summary judgment since material unresolved issues of fact existed and that the district court erroneously found that plaintiff's sole remedy was the Puerto Rico Workman's Accident Compensation Act instead of the more generous recovery allegedly available under the Jones Act and general maritime law. We affirm.

The following facts are undisputed. In April, 1970, Williams, a merchant seaman and resident of Puerto Rico, was hired out of the National Maritime Union hall in San Juan, Puerto Rico, to work as a cook on the tugboat *Barbara McAllister,* owned by defendant McAllister Brothers Inc. ("McAllister"), but bareboat chartered in 1968 to Port San Juan Towing Company ("PSJT"). The application for employment was a printed form which on its face gave no indication of the employer's name. Defendant McAllister is a New York corporation which wholly owns PSJT, its subsidiary. PSJT, incorporated in Puerto Rico, operates tugs and barges in and around Puerto Rico. Williams' wage vouchers and paychecks were from PSJT, described on those documents as a "subsidiary of McAllister Brothers, Inc." On December 6, 1970, Williams was injured in a fall from a ladder connecting a barge to the tug, which injury resulted in 10% disability of his left hand; at the time of the accident the tug was tied up at a dock in Port San Juan Harbor. He received $810 from the Puerto Rico State Insurance Fund and $1,620 in maintenance and cure from PSJT. Williams then commenced this suit against McAllister alleging both actionable negligence pursuant to the Jones Act and general maritime law and unseaworthiness of the vessel. Appellant proposes two theories to support this action against the parent corporation. First he claims that McAllister is in fact his employer because PSJT is merely a "sham" corporation totally under McAllister's dominion and control. Second, he urges that even if the two corporations are found to be dis-

tinct entities, the applicable Puerto Rico Workman's Accident Compensation Act ("WACA"), although an exclusive remedy as to employers, permits suits against third parties responsible for the injury; he argues that, as the owner of the vessel, McAllister did not satisfy its absolute obligation to furnish a seaworthy ship. We find each of these arguments to be without merit.

In reviewing the district court's grant of summary judgment to McAllister, we recognize that that court is charged not with the task of resolving issues of fact but with the task of determining whether any material factual issues exist. In so doing, the court must resolve all ambiguities and reasonable inferences in favor of the party against whom summary judgment is sought. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–1320 (2 Cir. 1975). "However, it is equally true that summary judgment should not be denied where the only issues raised are frivolous or immaterial ones which would simply serve to provide an exercise in futility or a purposeless trial for the district court . . . ." *United States v. Matheson*, 532 F.2d 809, 812–813 (2 Cir. 1976). To decide whether any material factual issues exist, we now proceed to a consideration of the relevant legal principles as they apply to the undisputed facts of this case.

Within the context of this case, appellant faces two formidable hurdles in pressing his Jones Act claim. One obstacle, ultimately insurmountable here, involves the special power that Congress granted to Puerto Rico to legislate within its territorial waters in a manner inconsistent with federal maritime remedies; the other concerns the requisite proof that McAllister rather than PSJT is appellant's employer within the meaning of the Jones Act.

The Jones Act, 46 U.S.C. § 688,[1] provides seamen with a "right of recovery against their employers for negligence resulting in injury or death. This right follows from the seaman's employment status . . ." *Moragne v. States Marine Lines*, 398 U.S. 375, 394, 90 S.Ct. 1772, 1784, 26 L.Ed.2d 339, 353 (1970). The courts consistently have construed this statute to apply "only between employees and their employers." *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 170 (2 Cir. 1973); *see also Cosmopolitan Co. v. McAllister*, 337 U.S. 783, 790, 69 S.Ct. 1317, 1321, 93 L.Ed. 1692, 1697 (1949); *The Norland*, 101 F.2d 967, 971, 9 Alaska 471 (9 Cir. 1939). The "plain and rational meaning of employment and employer" determines the availability of Jones Act coverage. *Cosmopolitan Co. v. McAllister, supra*, 337 U.S. at 791, 69 S.Ct. at 1321, 93 L.Ed. at 1698.

■ To succeed here appellant must successfully advance a two-step argument. First he must prove that PSJT is a "mere instrumentality" of McAllister, *i. e.*, that McAllister actually dominates PSJT such that the subsidiary has no existence of its own and that McAllister uses the corporate existence of PSJT to perpetrate a fraud, resulting in an unjust loss to the claimant. *See, Whayne v. Transportation Management Service, Inc.*, 252 F.Supp. 573, 577 (E.D.Pa.1966), *aff'd*, 397 F.2d 287 (3 Cir.), *cert. denied*, 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 438 (1968); 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 43 (1975). Ownership by a parent of all its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities. *Steven v. Roscoe Turner Aeronautical Corporation*, 324 F.2d 157 (7 Cir. 1963). Actual domination, rather than the opportunity to exercise control, must be shown. *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991 (5 Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972).

Appellant proffered the following evidence in support of his allegation that PSJT is a mere instrumentality of McAllister:

---

1. 46 U.S.C. § 688 provides, in pertinent part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury . . . Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

McAllister owns all the subsidiary's stock; the key officers and directors are from the McAllister family; PSJT works within the framework of McAllister policies; McAllister must be informed of and concur in major repairs. Appellant did not controvert evidence presented in affidavits submitted by McAllister that the two corporate entities were kept entirely separate in their business operations, that PSJT bareboat chartered some of its vessels from companies other than McAllister, and that such operational decisions as vessel maintenance, crewing, the movement of vessels, and the negotiation of customer contracts were made solely by PSJT. Given the "presumption of separateness" afforded to related corporations, *American Renaissance Lines, Inc. v. Saxis Steamship Co.,* 502 F.2d 674, 677 (2 Cir. 1974), and the showing of actual domination required to pierce the corporate veil, *United States v. Ira S. Bushey & Sons, Inc.,* 363 F.Supp. 110, 119 (D.Vt.), *aff'd,* 487 F.2d 1393 (2 Cir. 1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974), it is doubtful that appellant would have succeeded in establishing McAllister as his employer.

Even if appellant has presented sufficient proof on the "employer" issue, however, he must then argue that McAllister, uninsured under WACA, is not entitled to stand in the shoes of its subsidiary, which is insured under WACA. His problem is that if we were to accept his claim that PSJT was actually so dominated and controlled by McAllister as to be its "mere instrumentality," we would also have to conclude that PSJT was acting for McAllister in contracting for insurance coverage under WACA. Thus, even if we accept appellant's contention that the two corporations were a single entity, we still would hold that WACA applied to the facts of this case.

It is clear than Congress has granted Puerto Rico the power to legislate remedies for maritime claims arising within its territorial waters.[2] Federal admiralty laws, therefore, are currently operative in Puerto Rico "to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation." *Guerrido v. Alcoa Steamship Co., Inc.,* 234 F.2d 349, 355 (1 Cir. 1956). WACA, 11 L.P.R.A. § 1 *et seq.,* just such inconsistent legislation, provides for an exclusive remedy against employers for covered employees injured during the course of employment.[3] The undisputed facts of this case indicate that appellant, covered under WACA, was injured within Puerto Rico's waters during the course of his employment.

A series of decisions emanating from the First Circuit has held that within the area of its applicability, WACA has displaced federal maritime remedies. *Guerrido v. Alcoa Steamship Co., Inc., supra; Fonseca v. Prann,* 282 F.2d 153 (1 Cir. 1960), *cert. denied,* 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961); *Alcoa Steamship Company v. Rodriguez,* 376 F.2d 35 (1 Cir.), *cert. denied,* 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967); *Mojica v. Puerto Rico Lighterage Company Inc.,* 492 F.2d 904 (1 Cir. 1974); *see also Fanfan v. Berwind Corporation,* 362

---

**2.** 48 U.S.C. § 749 places under the control of the government of Puerto Rico "harbor areas and navigable streams and bodies of water . . . in and around the island of Puerto Rico and the adjacent islands and waters . . . . . All the laws of the United States for the protection and improvement of the navigable waters . . . and the preservation of the interests of navigation and commerce, *except so far as the same may be locally inapplicable,* shall apply to said island and waters and to its adjacent islands and waters." (Emphasis added.)

**3.** 11 L.P.R.A. § 21 in material part provides:

"When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer . . . .."

All employers employing one or more workmen covered must be insured under WACA. The only workmen excepted from coverage are those whose work is of an "accidental" or casual nature and those who work in their own homes. 11 L.P.R.A. § 2. *Castro v. Marrero,* 54 P.R.R. 189 (1939). Thus PSJT had a duty to insure its workmen under WACA.

F.Supp. 793 (E.D.Pa.1973).[4] The *Mojica* case dealt with Jones Act and general maritime law claims against a tugboat owner insured under WACA; the seaman in that case had been injured while working on a tug in San Juan Harbor. In holding that WACA was the seaman's exclusive remedy against his employer, the court noted that the "mere fact that the employer and owner of the tug, a Puerto Rican corporation, was a wholly owned subsidiary of a mainland corporation" did not afford a cause of action under the Jones Act.[5] 492 F.2d at 904. *Accord Fanfan v. Berwind Corporation, supra.* We agree with the reasoning of these decisions and hold that WACA provides the exclusive remedy against an employer for an insured seaman injured within the territorial waters of Puerto Rico. Since WACA would apply in this case even if McAllister were appellant's employer, as he contended, no material issue of fact remained, and the district court properly granted summary judgment.

Both parties to this action acknowledge that WACA does recognize an insured workman's right to an action based on other existing law against third parties, *i. e.,* nonemployers, responsible for his injury. 11 L.P.R.A. § 32;[6] *see Waterman Steamship Corporation v. Rodriguez,* 290 F.2d 175 (1 Cir. 1961); *Guerrido v. Alcoa Steamship Co., Inc., supra.* We next must consider appellant's allegation that McAllister, as third party-owner of the vessel, breached its absolute duty to provide him with a seaworthy vessel.

■ The existence of the bareboat charter, executed in 1968, greatly affects this claim. The bareboat charter is "an instrument for vesting in one person most of the incidents of ownership . . . while another retains the general ownership and the right of reversion." G. Gilmore & C. Black, The Law of Admiralty § 4–20 at 239 (2d Ed. 1975). The important legal effect of the bareboat charter is to recognize the charterer as the owner of the vessel *pro hac vice,* with the original owner's primary obligation being the furnishing of the vessel in seaworthy condition at the beginning of the charter term. To have caused appellant's injury within the meaning of WACA's third-party exception, then, the unseaworthy condition chargeable to McAllister must have preexisted the charter term. *Kerr-McGee Corporation v. Law,* 479 F.2d 61, 63 (9 Cir. 1973).

■ Within the facts of the case at bar, the alleged unseaworthy condition must have existed 2½ years prior to the injury, when McAllister bareboat chartered the tug to PSJT. The complaint merely alleges that Williams was caused to sustain injuries on December 6, 1970 by reason of the unseaworthiness of the vessel; there is no claim that the alleged unseaworthy condition preexisted the charter. The accident reports and affidavits submitted by McAllister show the existence of a bona fide bareboat charter[7] and describe the injury as occurring when appellant fell from a ladder connecting the top deck of the tug to a barge alongside. Rule 56(e), Fed.R.Civ.P.,

4. Recovery under the Jones Act was permitted, however, where the injury occurred outside Puerto Rico's territorial waters. *Caceres v. San Juan Barge Company,* 520 F.2d 305 (1 Cir. 1975).

5. Appellant cites *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) in support of his Jones Act claim. This case allowed an action under the Jones Act where a foreign seaman aboard a foreign ship in American territorial waters sustained shipboard injuries. The instant case is not within this precedent, however, since Congress has authorized Puerto Rico to enact legislation inconsistent with the Jones Act and general maritime law for application within its territorial waters.

6. 11 L.P.R.A. § 32 in pertinent part provides: "In case [sic] where the injury . . . entitling the workman or employee . . . to compensation in accordance with this chapter has been caused under circumstances making a third party responsible for such injury . . . the injured workman or employee . . . may claim and recover damages from the third party responsible for said injury . . . ."

7. On appeal appellant did not contest the validity of the bareboat charter. "To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, com-

requires that when, as here, "a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Affidavits submitted by appellant do not present any facts at all to support his rather farfetched contention that the injuries in question here could have been caused by an unseaworthy condition which had existed several years before the accident. We conclude, therefore, that appellant has raised no genuine material issue of fact concerning the unseaworthiness of the ship prior to the bareboat charter. *See, Fitzgerald v. Westland Marine Corporation,* 369 F.2d 499 (2 Cir. 1966); *Dressler v. M V Sandpiper,* 331 F.2d 130 (2 Cir. 1964).

The order of the district court is affirmed.

mand, and navigation' thereof to the demisee." *Guzman v. Pichirilo,* 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205, 207 (1962). The charter involved in the instant case required the charterer to crew, victual, fuel and supply the tug and pay for all port charges, deck and engine room stores, running expenses and all other costs and charges incidental to the vessel's use and operation; PSJT was also required to maintain the vessel in an efficient state with respect to equipment, hull and machinery. There can be little question that PSJT had possessory rights in the tug under this bareboat charter. *Cf., Stevens v. Seacoast Company,* 414 F.2d 1032 (5 Cir. 1969) (court overruled finding of bareboat charter where the arrangement did not vest any real possessory rights in the charterer and did not result in concomitant absence of control in the vessel owner).