**Lawrence M. ZINAMAN, Plaintiff,**

v.

**USTS NEW YORK, INC. and USTravel Systems, Inc., Defendants.**

**No. 91 Civ. 6808 (KTD).**

United States District Court, S.D. New York.

July 1, 1992.

---

Robinson Brog Leinwand Reich Genovese & Gluck, P.C., New York City (Anthony S. Genovese, of counsel), for plaintiff.

Lester Schwab Katz & Dwyer, New York City (Dennis M. Rothman, of counsel), for defendants.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Lawrence M. Zinaman ("Zinaman") brings this action for breach of contract, fraud, and age discrimination under both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and New York's Human Rights Law, N.Y.Exec.Law § 296, against defendants USTS New York, Inc. ("USTS") and US-Travel Systems, Inc. ("USTravel").[1] Zinaman seeks compensatory and punitive damages and injunctive relief.

Defendants move, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss: (1) the Complaint in its entirety against USTravel; (2) the first and second common law claims as outside the scope of this court's pendent jurisdiction; (3) the third and fourth claims as outside the scope of this court's pendent jurisdiction insofar as they allege violations of N.Y.Exec.Law § 296; (4) the demand clause of the third claim for relief; and (5) the second claim, alleging fraud, because it merely reiterates the contract claim. Defendants also move, pursuant to Fed. R.Civ.P. 12(f), to strike a portion of ¶ 1 and all of ¶ 32 of the Complaint.

## BACKGROUND

The Complaint, which I must take as true for the purposes of the instant motion to dismiss, alleges the following: Zinaman and his son, Steven R. Zinaman, owned and managed Travel Horizons, a travel agency, through a New York corporation known as Flomist Inc. Zinaman purchased Travel Horizons in 1970 and was its president from 1972 until its sale to USTS in July, 1989. Part of the consideration for USTS' purchase of Travel Horizons included a written employment agreement between USTS and Zinaman (the "Employment Agreement").[2]

The Employment Agreement was for a term of five years. It provided that Zinaman would hold the position of Executive Vice President of Travel Horizons, and that he would have responsibilities "consistent with [his] historical responsibilities [as President of Travel Horizons]." Compl. at ¶ 9 (quoting Employment Agreement at ¶ 3). The Employment Agreement also provided that Zinaman would have an "office, in Manhattan, and such other assistance and accommodations as are suitable to the character of [his] position...." Compl. at ¶ 10 (quoting Employment Agreement at ¶ 5).

On April 22, 1991, Zinaman was advised that Mona Clarke had been appointed Vice President and General Manager of Travel Horizons and that he was to report to her. On that date, it was also announced to the agency's employees that Mona Clarke was the new Operating Head of Travel Horizons and that Zinaman was no longer performing those duties. Shortly thereafter, all of Zinaman's administrative functions were taken away from him, including those he had performed at Travel Horizons. On May 17, 1991, Zinaman was handed a letter by USTS' Senior Vice–President Dennis S. Lewis and Corporate Vice President Joseph Dooley advising him that USTS was performing an internal audit with respect to expenses billed to Travel Horizons. This letter requested that Zinaman take a leave of absence for two weeks and further requested that he not report to his office during the period of the investigation. After two weeks, Zinaman contacted USTS'

---

1. The first cause of action alleges breach of contract, while the second alleges fraud. The third and fourth causes of action are each brought under both the ADEA and N.Y.Exec. Law § 296. The third cause of action seeks damages while the fourth seeks an order direct- ing USTS and USTravel to reinstate Zinaman and to cease and desist from discriminatory practices.

2. Upon its sale, Travel Horizons became a subsidiary of USTS.

counsel regarding the status of the investigation and was informed that it would be complete by June 7, 1991. As of the date he filed his complaint in this action, he had not been informed of results of the investigation.

On August 7, 1991, Zinaman filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") against USTravel. Shortly thereafter, he was asked to report for work as a member of the USTS sales force. He did so on August 18, 1991. Zinaman alleges that, after his return, USTravel caused USTS to breach the terms of the Employment Agreement by:

(a) instructing [him] to solicit new sales and new accounts by making cold calls and assigning the Borough of Manhattan as his sales territory, despite the fact that [his] historical duties did not include solicitation of sales, and cold calls are entirely inappropriate for the former President of Travel Horizons;

(b) failing to provide [him] with an office and humiliating him by forcing him to work at a desk in a large open area where he is adjacent to the phone operator and young trainees making cold calls;

(c) failing to treat [him] as an executive and requiring him to sign in and out each day, and requiring him to submit a daily accounting of his activities;

(d) informing [him] that he will become a part of the USTS New York sales force, a position which is entirely inconsistent with his position as Executive Vice President of Travel Horizons and his historical duties; and

(e) preventing [him] from having any role with respect to Travel Horizons ... thereby precluding him from having any ability to influence Travel Horizon's performance which has a direct bearing on his right to bonus compensation under the Employment Agreement.

Compl. at ¶ 23.

By letter dated September 3, 1991, Zinaman gave USTS fifteen days written notice

of his termination of the Employment Agreement.[3] USTS took no action to redress the alleged breaches within this fifteen-day period. Instead, USTS claimed that Zinaman had terminated the Employment Agreement without cause and stated that Zinaman would no longer receive his salary or other payments. Zinaman alleges that this response constitutes a further breach of the Employment Agreement.

Based on the foregoing facts, Zinaman alleges, as his first cause of action, that USTravel caused USTS to breach the Employment Agreement. As a second cause of action, he alleges that USTravel caused USTS to fraudulently induce him to enter into the Employment Agreement. In the third and fourth causes of action, Zinaman asserts that USTravel and USTS have discriminated against him because of his age in violation of the ADEA and Section 296 of the New York Executive Law. *See supra* note 1.

## DISCUSSION

A. The Motion to Dismiss

On a motion to dismiss, the complaint must be read in the light most favorable to the nonmovant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint cannot be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984).

1. The Complaint against USTravel

Defendants contend that Zinaman's contract, fraud, and ADEA claims against USTravel should be dismissed because USTravel was not Zinaman's employer, and the allegations in the complaint do not es-

---

**3.** ¶ 9.3 of the Employment Agreement provides that Zinaman could terminate his employment for cause provided that (1) he give fifteen days written notice stating the grounds for his desire to terminate, and (2) USTS did not correct, within fifteen days, the cause upon which Zinaman based his right to terminate.

tablish that USTravel is the "alter ago" of USTS. Defendants argue that Zinaman's Complaint is deficient because it merely alleges a parent-subsidiary relationship between USTravel and USTS and does not specifically set out those facts required to establish the liability of the parent, USTS, for the acts of its subsidiary, USTravel, on an alter ego theory.

■ Under New York law, two elements must be pleaded and proven in order to establish liability under an "alter ego" theory: (1) that the parent exercised such complete domination "in respect to the transaction attacked" that the subsidiary had "at the time" no separate will of its own, and (2) that this domination was used to "commit fraud or wrong" against the plaintiff, which proximately caused the plaintiff's injury. *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.) (quoting *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 287 N.Y.S. 62 (1st Dep't), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936)), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). I will consider each element in turn.

■ Zinaman does not allege that USTS was controlled and dominated to such an extent that it "had no existence of its own." *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 733 (S.D.N.Y.1986). The Complaint merely alleges that USTravel "owns and controls USTS." Compl. at ¶ 23. Moreover, Zinaman makes no reference to the factors typically considered in applying the alter ego theory, such as the absence of formalities in corporate decision making, and inadequate capitalization. *See Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. at 733 (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984)). Hence, Zinaman's allegations fail to plead the "control and domination" necessary to justify bringing the USTravel into this dispute.

■ Even assuming Zinaman pled the requisite control and domination, he fails to allege that USTravel used this control and domination to commit a fraud or legal wrong. Zinaman merely asserts that USTravel participated with and "caused" USTS to take the actions which proximately caused his damages. *See* Compl. at ¶¶ 13, 23, 28, 31–32, 38 & 41. These allegations are insufficient to show the requisite second element. For a viable claim to exist on an alter ego theory, the plaintiff must spell out some evidence of fraud. *See New York State Teamsters Conference Pension & Retirement Fund v. Hoh*, 554 F.Supp. 519, 525 (N.D.N.Y.1982) (mere allegations of fraud in complaint insufficient to establish parent as alter ego of subsidiary and justify piercing the corporate veil).

As against USTravel, Zinaman's Complaint is conclusory at best and fails to plead to requisite elements of an alter ego theory. Therefore, the claims against USTravel are dismissed. *See Klockner Stadler Horter Ltd. v. Insurance Co. of Pennsylvania*, 785 F.Supp. 1130, 1135–36 (S.D.N.Y.1990).

### 2. The Pendent State Common Law Contract and Fraud Claims

■ Defendants argue that Zinaman's pendent state common law claims for breach of contract and fraud should be dismissed because they permit Zinaman to recover compensatory and punitive damages, both of which are unavailable under the ADEA. To prove these claims, defendants contend, Zinaman would have to provide evidence extraneous to his ADEA claim. Thus, defendants urge this court to decline pendent jurisdiction over the breach of contract and fraud claims.

In determining whether or not to exercise pendent jurisdiction, the following factors must be considered:

(a) whether judicial economy, convenience and fairness to the litigants would be served by having the pendent state claims determined in a single proceeding, (b) whether trying the pendent state law claims will cause jury confusion and (c) whether the pendent state claims present unsettled questions of state law.

*See United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Moor v. Coun-*

*ty of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

Although in certain age discrimination suits, a court may decline to exercise jurisdiction over pendent state law claims, *see, e.g., Arnell v. Pan American World Airways, Inc.,* 611 F.Supp. 908, 910 (S.D.N.Y. 1985) (declining to exercise pendent jurisdiction over state common law claims in ADEA action where, *inter alia,* "considerations underlying the state claims are so different from those underlying the federal claim," and state claims implicate a developing area of state law), I do not see why I should do so here. First, the state common law claims at issue derive from a common nucleus of operative facts and would ordinarily be tried in a single proceeding. Second, the existence of varying remedies under state law will not unduly complicate these proceedings. Careful instructions to the jury will minimize any possible confusion. Finally, the pendent state claims do not present unsettled questions of state law. Thus, defendants' motion to dismiss plaintiff's first and second claims is denied.

### 3. The State Age Discrimination Claims

■ Defendants further urge this court to decline pendent jurisdiction over the third and fourth claims, both based on age/employment discrimination, to the extent they rely on § 296 of the New York Executive Law. The issue of pendent jurisdiction over a claim under Section 296 raises some distinct concerns. A federal court cannot exercise jurisdiction over a state claim for age discrimination while the plaintiff's state administrative proceeding is pending. *Promisel v. First American Artificial Flowers,* 943 F.2d 251, 254–58 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Here, Zinaman has not alleged sufficient facts for this court to determine whether there is

an ongoing state administrative proceeding over his claim for age discrimination under Section 296. Consequently, I cannot determine whether I should hear Zinaman's Section 296 claim until Zinaman has amended his Complaint to provide the requisite information. Zinaman is directed to do so within 10 days of the date of this order. Should Zinaman demonstrate that state proceedings have been terminated, this court will exercise its discretion to hear the pendent Section 296 claim. *See Promisel,* 943 F.2d at 257–58. Should Zinaman fail to timely file the requisite amendment, or indicate his failure to exhaust such state remedies, this cause of action will be dismissed.

### 4. The Demand Clause of the Third Cause of Action

■ Zinaman's third cause of action alleges violations of both the ADEA and Section 296 of the New York Executive Law. Zinaman claims he has been damaged in an amount "not less than $2 million dollars" for these violations. In his demand clause, Zinaman seeks an award of back pay and front pay with respect to his bonus compensation, liquidated and punitive damages. Defendants argue that this demand clause should be dismissed because it seeks compensatory and punitive damages, which, while recoverable under state law, are not recoverable under the ADEA.[4]

The cure for Zinaman's inartful demand is for Zinaman to plead the ADEA claim as separate and distinct from the claim under Section 296. This may be accomplished in the amended complaint permitted by this memorandum. Failure to do so will be deemed an election of remedies by plaintiff and an abandonment of the state claims.

### 5. The Fraud Claim

■ Defendants next argue that Zinaman's fraud claim[5] should be dismissed

---

**4.** Defendants are correct in arguing that the ADEA limits the kinds of damages available for non-willful violations of the ADEA. *See* 29 U.S.C. § 626(b); *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 147–48 (2d Cir.1984). Further, for willful violations of the ADEA, the statute allows liquidated or double damages, which are considered punitive in nature. *See*

*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

**5.** Zinaman's fraud claim alleges that:

At the time that USTS executed the Employment Agreement, USTS did not intend to abide by its obligations under the Employment Contract. USTravel caused USTS to

because no cause of action for fraud arises under New York law when, in pleading the fraud, the plaintiff does not set out an independent tort, but merely duplicates the contract claim. Zinaman argues that the fraud count "places the breaches of [the employment contract] in the larger context of defendants' purchase of the travel agency. The complaint alleges that the defendants make misrepresentations as part of a fraudulent scheme to purchase travel agencies and then renegotiate the terms of the purchase of those agencies." Plaintiff's Memorandum at 7.

Zinaman's fraud claim essentially states nothing more than that when defendants entered into the Employment Agreement they did not intend to honor their obligations under it. Under New York law, "[a] failure to perform promises of future acts is merely a breach of contract to be enforced by an action on the contract. A cause of action for fraud does not arise when the only fraud relates to a breach of contract." *Grant v. DCA Food Indus.*, 124 A.D.2d 909, 508 N.Y.S.2d 327, 328 (3rd Dep't 1986) (quoting *Tesoro Petroleum Corp. v. Holborn Oil Co.*, 108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dep't 1985)); *see also Vista Co. v. Columbia Pictures Indust., Inc.*, 725 F.Supp. 1286, 1294 (S.D.N.Y.1989) ("New York law states clearly that an allegation that the defendant 'made the agreement knowing that [he or she] would not abide by it ... says nothing which is not

legally embraced by [a] cause of action for breach of contract' ") (citation omitted).

Zinaman's argument that the fraud claim places the breach in a larger context is unavailing because Zinaman does not allege that defendants breached any duty owed to him separate and apart from their contractual duty. The fact remains that the fraud claim states nothing more than does the breach of contract claim. Consequently, Zinaman fails to state a cause of action for fraud. Defendants' motion to dismiss Zinaman's fraud claim is therefore granted.

**B. Motion to Strike Portions of the Complaint**

 Defendants argue that portions of the Complaint should be stricken as "redundant, immaterial, impertinent, or scandalous material." *See* Fed.R.Civ.P. 12(f). Defendants' motion to strike all of paragraph 32 of the Complaint is moot because I have already dismissed the fraud count. *See* discussion *supra*. Defendants' motion to strike portions of paragraph one, however, must be addressed. In pertinent part, paragraph one recites that:

> USTS and USTravel have adopted a fraudulent pattern and practice of purchasing travel agencies, entering into employment agreements with the former owners of the travel agencies as part of the consideration for the purchase of each agency, and then breaching the employment agreements in an effort to re-

fraudulently induce [Zinaman] to enter into the Employment Contract by misrepresenting, among other things:

(a) that [Zinaman] would hold the position of Executive Vice President of Travel Horizons and that his responsibilities would be consistent with his historical duties as President of Travel Horizons;

(b) that [Zinaman] would be furnished with an office and such other assistance and accommodations as are suitable to the character of his position; and

(c) that [Zinaman] would, as Executive Vice President of Travel Horizons, have an ability to influence Travel Horizons performance which has a direct bearing on his right to bonus compensation under the Employment Contract.

USTravel and USTS have adopted a fraudulent pattern and practice of purchasing travel

agencies, entering into employment agreements with the former owners of the travel agencies as part of the consideration for the purchase of each agency, and then breaching the employment agreements in an effort to renegotiate the terms of the purchase of each travel agency. On information and belief, USTravel and USTS have attempted to defraud, among others, Kal London—former owner of Connecticut Travel Services—and Sid Vinyard—former owner of Hickory Travel Systems—in this manner.

[Zinaman] relied upon USTS' fraudulent representations to his detriment.

By reason of the foregoing acts and practices, plaintiff has been damaged in an amount to be determined at trial, but which is not less than $2 million.

Complt. at ¶¶ 31–34.

negotiate the terms of the purchase of each travel agency.

Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the dispute. *Mikropul Corp. v. Desimone Chaplin–Airtech, Inc.*, 599 F.Supp. 940, 945 (S.D.N.Y.1984). "Matter will not be stricken on the ground that it is immaterial and impertinent unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892–93 (2d Cir.1976).

At this stage in the proceedings, I cannot find that Zinaman's allegations in paragraph one of the Complaint will have no bearing on this dispute. I agree with Zinaman that the allegations, if true, may be relevant defendants' motives for their actions, their intent and/or plan in entering into the series of contracts with Zinaman to purchase Travel Horizons and then breaching the Employment Contract.

Accordingly, defendants' motion to strike matter from the pleading is denied.

For the foregoing reasons, (1) defendants' motion to dismiss the Complaint in its entirety against USTravel is granted; (2) defendants' motion to dismiss the state common law contract and fraud claims is denied; (3) defendants' motion to dismiss Zinaman's claims under Section 296 of the New York Executive Law is denied; (4) defendants' motion to dismiss Zinaman's request for compensatory and punitive damages on the third claim for relief is denied; (5) defendants' motion to dismiss Zinaman's fraud claim is granted; (6) defendants' motion to strike portions of the Complaint, to the extent it is not mooted by this opinion, is denied. Zinaman is directed to amend his Complaint in accordance this memorandum within 10 days of the date of this order.

SO ORDERED.