**STATUS INTERNATIONAL S.A., as Owner of the M/V/ Esperanza C, Plaintiff,**

v.

**M&D MARITIME LTD., Global Maritime, Inc., and Conagra International Fertilizer Co., Defendants.**

No. 97 Civ. 9133(SAS).

United States District Court, S.D. New York.

Feb. 4, 1998.

Jeremy Harwood, Healy & Baillie, L.L.P., New York City, for Status Intern. S.A.

Michael O. Hardison, Alan Van Praag, Edward M. Cuddy, III, Snow Becker Krauss, P.C. New York City, for M&D Maritime Ltd., Global Maritime, Inc.

Edward L. Powers, Richards & O'Neil, L.L.P., New York City, for Conagra International Fertilizer Co.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Status International S.A. ("Status") brings this action against M & D Maritime, Ltd. and its agent, Global Maritime (collectively "M & D/Global"), and Conagra Fertilizer Co. ("Conagra"), to enforce a maritime lien on certain subfreights and demurrage. M & D/Global moves to dismiss

Plaintiff's claim for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). Status, in turn, moves for partial summary judgment on its claim against M & D/Global.

## I. Factual Background

The following facts are assumed to be true for purposes of this motion. On or about March 6, 1996, Status, as owner of the M/V Esperanza, entered into a charter party with Cory Irmaos Ltda. ("Cory"), as charterer of the vessel (the "Cory Charter"). Complaint at ¶ 6. Clause 23 of the Cory Charter states: "The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due under this Charter Party, including general average contributions. . . ." See Affidavit of Jeremy Harwood, Attorney for Plaintiff ("Harwood Aff."), dated December 29, 1997, Ex. 1. Plaintiff duly performed its obligations under the Cory Charter. Complaint at ¶ 7. However, during the course of its performance, Cory failed to pay hire in the amount of $150,987 and port expenses in the amount of $71,147. Id.

Dalry, a company wholly owned by Cory, sub-chartered the vessel to M & D/Global under a charter party dated May 6, 1996 (the "M & D Charter"). Id. at ¶ 8. M & D/Global, in turn, further sub-chartered the vessel to Conagra as part of a contract of affreightment and charter party dated April 3, 1996 (the "Conagra Charter").[1] Id. at ¶ 9. The Conagra Charter and the M & D Charter have substantially similar terms and conditions. Id. at ¶ 10.

The following obligations remain unpaid. First, under the Conagra Charter, Conagra owes M & D/Global an amount exceeding $110,000. Id. at ¶ 13. Second, under the M & D Charter, M & D/Global owes Dalry at least $173,000 in sub-charter freight and demurrage. Id. at ¶ 14. Third, Cory owes Status at least $270,000 in demurrage and agency fees. Id. at ¶ 15. Plaintiff contends that in light of provisions of the sub-charter agreements, the amount that Conagra owes M & D/Global, and that M & D/Global owes

Dalry, are owed "up the charter party chain" to Status. See id. at ¶ 12.

Status issued notices of lien to Cory, Dalry, M & D/Global, and Conagra, which state these unpaid amounts. Id. at ¶ 11. Cory, Dalry, M & D/Global, and Conagra refused to honor those notices of lien. Id. On December 19, 1997, this Court granted Plaintiff's ex parte motion for the issuance of a maritime attachment, pursuant to Fed. R.Civ.P. Supp. Rule B(1), of monies belonging to Defendants in three commercial banks located in Manhattan. See Status International S.A. v. M & D Maritime, 97 Civ. 9313 (S.D.N.Y. Dec. 19, 1997) (order directing clerk to issue process of maritime attachment). On January 7, 1998, the Court denied M & D/Global's motion to vacate the attachment. See Transcript of Order to Show Cause Hearing at 18. M & D/Global now moves to dismiss Plaintiff's claim to enforce its lien.

## II. Legal Standard for Motion to Dismiss

Defendants do not dispute that an action to enforce a maritime lien is a maritime cause of action within the jurisdiction of this Court. Rather, Defendants contend that the Court lacks subject matter jurisdiction because the complaint does not state sufficient facts to support the enforcement of a maritime lien.

Where a plaintiff does not sufficiently allege a claim for relief, the action should be dismissed under Fed.R.Civ.P. 12(b)(6), rather than under Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction). See Health Cost Controls v. Skinner, 44 F.3d 535, 537 (7th Cir.1995); Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1280–1281 (3d Cir.1993); see also Cromwell v. Equicor–Equitable HCA Corp., 944 F.2d 1272, 1277 (6th Cir.1991). Given Defendants' challenge to the sufficiency of the pleadings, the complaint is reviewed under a 12(b)(6) standard.

In considering a 12(b)(6) motion to dismiss, a district court must limit itself to "facts stated in the complaint or in documents attached to the complaint as exhibits or incor-

---

1. There exists a discrepancy between the dates given for the M & D Charter and Conagra Charter. M & D/Global must have chartered the

vessel from Dalry before sub-chartering it to Conagra. Thus it appears that one of the dates alleged in the complaint is erroneous.

porated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 661 (2d Cir.1996) (internal quotations omitted). A court deciding such a motion must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). Furthermore, a 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Rather, dismissal can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Bernheim*, 79 F.3d at 321 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted).

### III. Discussion of Motion to Dismiss

#### A. *Lien on Subfreights and Demurrage*

 "To secure payments of freight due from a charterer of its ship, a shipowner may create, by express provision in the charter

party, a lien on the subfreights earned by the vessel." *Cornish Shipping Ltd. v. Int'l Nederlanden Bank N.V.*, 53 F.3d 499, 502 (2d Cir.1995). Subfreights are "amounts that third-party payors—whether subcharterers, shippers, or consignees (generically: 'consignees')—contract to pay the charterer for the use of the ship or the transport of goods." *Id.* Where the charterer defaults on its payment of freight or its other obligations under the charter party, the owner may exercise its lien on the subfreights by giving notice to the consignee.[2] *Id.*

 An action to enforce such a lien against subfreights is an in personam admiralty action. *See Saint John Marine Co. v. United States*, 92 F.3d 39, 43 (2d Cir.1996). However, a lien on subfreights is purely a creature of contract and may only arise pursuant to an express provision in the charter of the vessel earning the subfreights. *Finora Co. v. Amitie Shipping, Ltd.*, 54 F.3d 209, 213 (4th Cir.1995); *In re North Atlantic and Gulf S. S. Co.*, 204 F.Supp. 899, 904 (S.D.N.Y. 1962); 8 Benedict on Admiralty § 12.01 n. 167 (1996) (collecting cases).[3]

Clause 23 of the Cory Charter provides Plaintiff with a contractual lien on subfreights due Cory. Assuming, as alleged, that Plaintiff provided M & D/Global with notice of the lien provision and monies owed, then Plaintiff has an enforceable maritime lien on any subfreights owed by M & D/Global to Cory. *See Cornish Shipping*, 53 F.3d 499, 504; *Hornbeck Offshore Operators, Inc. v. Ocean Line of Bermuda, Inc.*, 849 F.Supp. 434, 439 (E.D.Va.1994). However, the com-

**2.** Demurrage is the amount fixed by agreement for remuneration to the owner of a ship for the detention of his vessel beyond the number of days fixed in the charter party for loading and unloading or sailing. Thus, courts have treated demurrage simply as one class of freight, classifying it as "extended freight." *See Ocean Transport Line, Inc. v. American Philippine Fiber Indus., Inc.*, 743 F.2d 85, 92 (2d Cir.1984). Accordingly, a shipowner may also acquire a lien on demurrage through a provision in the charter party. *See Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 5 (2d Cir.1970).

**3.** In support of its argument that vessel owners possess a general right to subfreights earned by their vessels, Plaintiff cites several cases which concern liens on cargo, rather than on sub-

freights. A shipowner's lien on cargo exists as a matter of law so long as the cargo remains in the ship owner's actual or constructive possession. *See Beverly Hills Nat'l Bank & Trust Co. v. Compania De Navegacione Almirante S.A.*, 437 F.2d 301, 303 (9th Cir.1971); *N.H. Shipping Corp. v. Freights of the S/S Jackie Hause*, 181 F.Supp. 165, 169 (S.D.N.Y.1960). Because Plaintiff does not assert a lien on cargo, this non-contractual right is irrelevant here. Plaintiff also relies on *Taiwan Int'l Line Ltd. v. Matthew Ship Chartering of Montreal*, 546 F.Supp. 826 (S.D.N.Y.1982), as authority for the proposition that the owner of a vessel is always entitled to a lien subfreights. *Taiwan*'s remarks on this issue were merely *dicta*, as the charter party there explicitly granted the owner a lien on subfreights.

plaint states that it was Dalry, not Cory, which chartered the vessel to M & D/Global. To support its contention that Cory is entitled to subfreights owed by M & D/Global to Dalry, Plaintiff contends that Dalry is Cory's alter ego.

### B. *Pleading Alter Ego*

 Federal courts sitting in admiralty apply federal common law when examining corporate identity. *See Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir.1986); *Matter of Arbitration between Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd.*, 774 F.Supp. 840, 844 (S.D.N.Y.1991). Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter ego to perpetrate a fraud *or* (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own. *Dow Chemical*, 782 F.2d at 342; *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 984–85 (2d Cir.1980); *see also Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir.1997); *Northern Tankers (Cyprus) Ltd. v. Backstrom*, 967 F.Supp. 1391 (D.Conn.1997).

 This standard is identical to the New York veil piercing standard previously applied in this Circuit.[4] *See, e.g., Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir.1993). Under that standard, "[o]wnership by a parent of all its subsidiary's stock [is] an insufficient reason in and of itself to disregard distinct corporate entities. Actual domination, rather than the opportunity to exercise control, must be shown." *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 21 (2d Cir. 1976). A plaintiff must allege sufficient facts

from which a court may infer that the parent company dominated the affairs of its subsidiary. *See De Jesus*, 87 F.3d at 69 (dismissing claim relying on alter ego theory where plaintiff did not allege facts showing, *inter alia*, actual domination of subsidiary by parent company); *Zinaman v. USTS New York, Inc.*, 798 F.Supp. 128, 132 (S.D.N.Y.1992) (dismissing claim relying on alter ego theory where plaintiff merely alleged that parent company "owns and controls" subsidiary).

 Plaintiff alleges only that Dalry is "wholly owned" by Cory. *See* Complaint at ¶ 8. This allegation alone is insufficient to overcome the presumption of corporate separateness. *See McAllister Bros.*, 534 F.2d at 21. The complaint is devoid of any other facts supporting Plaintiff's assertion that Cory is the alter ego of Dalry. Therefore, Plaintiff fails to allege sufficient facts to support its claim that M & D/Global owes subfreights to Cory and Status.

### IV. Conclusion

For the reasons stated above, M & D/Global's motion to dismiss is granted. Because Plaintiff's claims against all Defendants rely on the same averment of corporate relationship between Cory and Dalry, Plaintiff's claim against Defendant Conagra is dismissed sua sponte. Therefore, Plaintiff's claims against *all* Defendants are dismissed without prejudice and Plaintiff is granted leave to amend its complaint. As a result, the Rule B attachment of Defendants' assets, which was issued pursuant to this Court's order of December 19, 1997, is hereby vacated and Plaintiff's motion for summary judgment is denied.[5] If no amended complaint is

---

4. The prerequisites for proving an alter ego theory under New York law have since been revised to require a showing of *both* (I) domination and control, *and* (ii) use of domination to commit fraud or a wrong injuring the party seeking to pierce the corporate veil. *See American Fuel Corp. v. Utah Energy Development Co.*, 122 F.3d 130, 134 (2d Cir.1997). Because New York law does not determine federal common law, the disjunctive standard set forth in *Dow Chemical* and *Kirno Hill* is controlling.

5. Plaintiff also failed to satisfy several procedural prerequisites to filing a summary judgment motion. For example, Plaintiff did not comply with Local Civil Rule 56.1, which requires that a party file a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried" before filing a summary judgment motion. Nor did Plaintiff comply with my individual rules which require that parties attend a pre-motion conference before filing a summary judgment motion.

filed by February 24, 1998, this action will be closed.