**Jack CAMPO, Plaintiff,**

v.

**1ST NATIONWIDE BANK, FN Projects, Inc., FN Development Company, Bravo, 1ST Nationwide Network Mortgage Company, and United Citizens Mortgage Company, Defendants.**

93 CV 5067 (JRB).

United States District Court,
E.D. New York.

June 30, 1994.

Joseph W. Prokop, Prokop & Prokop, East Setauket, NY, for plaintiff.

James Stengl, Peter Bicks, Donovan, Leisure, Newton & Irvine, New York City, for defendants.

### MEMORANDUM AND ORDER

BARTELS, District Judge.

Plaintiff Jack Campo brings this action for breach of contract, breach of fiduciary duty, and tortious interference against defendant First Nationwide Bank and several of its subsidiaries or agents. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ["Rule"] 12(b)(6) for failure to state a claim upon which relief may be granted. In response, plaintiff has moved to amend the complaint

1. For purposes of this motion to dismiss, the court adopts plaintiff's version of events from the

pursuant to Rule 15(a). For reasons more fully explained herein, the motion to amend the complaint is granted, and the motion to dismiss is granted in part and denied in part.

### FACTS [1]

Plaintiff Campo is a builder and developer of subdivisions consisting of single-family residences. Campo entered into fourteen separate "Development Management Agreements" with various defendants for the purpose of acquiring and developing residential properties. Pursuant to these agreements, defendants were to provide financing to purchase the property and fund various construction projects, while plaintiff was to develop and construct the housing.

Defendant First Nationwide National Bank ["First Nationwide"] did not sign any of these agreements; however, plaintiff alleges that First Nationwide owned, operated and controlled each of the other defendant corporations, including United Citizens Mortgage Company, First Nationwide Network Mortgage Company, First Nationwide Network and FN Projects. Ten of the Development Management Agreements have been completed. Plaintiff alleges that defendants breached the remaining four agreements while the projects were still under construction.

*The Hallock Meadow Agreement*

In 1989 plaintiff completed construction on a profitable project called Hallock Meadow. He subsequently commenced an action in this court, *Campo v. 1st Nationwide Bank*, 91 CV 1076 (JRB), claiming that First Nationwide and FN Projects wrongly withheld $232,-240.92 in profits that were due to plaintiff upon completion. That action was settled by a Stipulation of Settlement, so-ordered by the court on September 1, 1991, pursuant to which defendants agreed to pay plaintiff $60,-000 and promised to pay the balance of the funds upon completion of all projects still under construction.

In this case, plaintiff claims that First Nationwide and FN Projects breached the

Proposed Amended Complaint.

September 1991 Stipulation and Order relating to the Hallock Meadows project. He alleges that defendants did not allow him to complete the unfinished projects, in breach of several of the Development Management Agreements. Plaintiff claims that these breaches also constitute a breach of the September 1991 Stipulation in 91 CV 1076 because defendants prevented him from completing the projects which would entitle him to payment of the Hallock Meadow profits under the Stipulation.

*The Tinker Bluff and Port Jefferson Woods Agreements*

Between August 1985 and December 1987, plaintiff entered into three Development Management Agreements with defendants First Nationwide Network and FN Projects for the acquisition and development of a parcel of land in Poquott, New York ["the Tinker Bluff" project]. One or more of these agreements were assigned to defendant FN Development in 1992.

In 1986 and 1987, plaintiff entered into four Development Management Agreements with defendant First Nationwide Network for the development of projects in Port Jefferson Station, New York ["the Port Jefferson Woods" project]. First Nationwide Network subsequently changed its name to FN Projects and then assigned its interest in these agreements to FN Development.

Plaintiff alleges that he completed all of his obligations under the Tinker Bluff and Port Jefferson Woods Agreements, but that First Nationwide, FN Development and FN Projects breached these agreements by failing to pay contractors for work that was completed and by failing to reimburse plaintiff for general and administrative costs and other obligations.

In addition, the complaint alleges that defendants breached the Tinker Bluff Agreements by selling several of the lots that were part of the Tinker Bluff property to another builder on October 1, 1992 without prior notice to plaintiff. Plaintiff was damaged by this breach because he lost revenues and profits to which he was entitled for those lots. In addition, plaintiff suffered damages because the other builder was selling homes at a substantially lower price in the middle of the subdivision that plaintiff was developing and attempting to market. Plaintiff also alleges that First Nationwide and FN Development contacted individuals who had contracted with him for the construction and purchase of homes and advised them that another builder would be selling the lots.

According to the complaint, defendants further breached the Tinker Bluff and Port Jefferson Woods Agreements by ordering him to stop work on the projects on November 13, 1992 without complying with the contracts' specified termination procedures. Although First Nationwide admitted it was in breach and allowed plaintiff to resume construction the following week, plaintiff was unable to do so due to the unavailability and unwillingness of subcontractors. On December 7, 1992, First Nationwide instructed plaintiff to vacate the premises and deliver his files to another builder.

On December 23, 1992, FN Projects and FN Development enacted the termination provisions of the Port Jefferson Woods and Tinker Bluff Agreements. According to the complaint, plaintiff subsequently acquired the right to purchase from defendants the undeveloped lots covered by those agreements. However, plaintiff alleges that FN Development and First Nationwide have wrongfully prevented the transfer of title to this property.

*The Complaint*

Plaintiff's Proposed Amended Complaint contains nine causes of action. Counts 1 and 2 allege breach of contract and breach of fiduciary duty by First Nationwide Network, FN Projects and FN Development in connection with the Tinker Bluff Agreements. Counts 3, 4, 6 and 7 allege breach of contract and breach of fiduciary duty by First Nationwide Network, FN Projects and FN Development in connection with the Port Jefferson Woods Agreements. Count 5 alleges breach of contract by First Nationwide Network in connection with the Hallock Meadow Agreement and breach of the September 4, 1991 Stipulation of Settlement. Count 8 alleges tortious interference with business and contract relationships by First Nationwide in connection with the Tinker Bluff and Jeffer-

son Woods Agreements. Count 9 contains a demand for specific performance of the Jefferson Woods Agreements.

Defendants moved to dismiss the complaint on the following grounds: (1) plaintiff's claims improperly charge non-parties to the contracts with breach and fail to specify the contractual terms allegedly breached; (2) the claims for breach of fiduciary duty and tortious interference fail to allege facts which would establish the requisite elements of those claims; and (3) the request for punitive damages is improper under New York law. In response, plaintiff has moved pursuant to Rule 15(a) to amend the complaint and offers a Proposed Amended Complaint in an effort to cure the pleading deficiencies asserted in defendants' motion. Defendants oppose granting leave to amend, and argue that the Proposed Amended Complaint also fails to state a claim upon which relief may be granted.

## DISCUSSION

### I. AMENDMENT OF THE COMPLAINT

■■■ The granting of leave to amend a pleading is within the discretion of the district court, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (per curiam), and leave "shall be freely given when justice so requires." Rule 15(a). *See also Murray v. United States Department of Justice*, 821 F.Supp. 94, 101 (E.D.N.Y.), *aff'd*, 14 F.3d 591 (2d Cir.1993). Leave to amend may be denied only where the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Williams v. Brooklyn Union Gas Co.*, 819 F.Supp. 214, 223 (E.D.N.Y.1993) (citing *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230). Here, the court finds no undue delay or bad faith on the part of the plaintiff or any prejudice to defendant that would result from amendment of the complaint. Moreover, leave to replead should generally be permitted upon granting a motion to dismiss, unless it is clear that the plaintiff can-

not allege any facts sufficient to support its claims. *See, e.g., Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Pompano–Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F.Supp. 1265, 1291 (S.D.N.Y.1992). Accordingly, plaintiff's motion for leave to amend will be granted if the court determines that the Proposed Amended Complaint states a claim upon which relief may be granted.

### II. SUFFICIENCY OF THE AMENDED COMPLAINT

#### A. *Applicable Legal Standards*

■■■ The court may grant a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) only where it is beyond doubt that the plaintiff cannot prove any set of facts supporting entitlement to relief. *H.J. Inc., v. Northwestern Bell Telephone Company*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In deciding the motion, the court must accept as true the material facts alleged in the complaint, *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991), and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■■■ In addition, the court is not permitted to consider factual matters submitted outside of the complaint unless the parties are given notice that the motion to dismiss is being converted to a motion for summary judgment under Rule 56 and are afforded an opportunity to submit additional affidavits. *See Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 38 (2d Cir.1990) ("this provision . . . is mandatory with respect to motions pursuant to Rule 12(b)(6)"); *Wiener v. Napoli*, 760 F.Supp. 278, 282 (E.D.N.Y.1991). In this case, both parties have submitted affidavits and exhibits in connection with the motion to dismiss. However, the parties have not had an opportunity to submit all of the pertinent material for a summary judgment motion; moreover,

the factual discovery which would make this case ripe for a summary judgment motion has yet to be completed. Therefore, the court will not consider any affidavits or other factual assertions outside of the complaint in assessing the sufficiency of the Proposed Amended Complaint.

### B. *The Contract Claims*
### 1. Sufficiency of Plaintiff's Allegations Regarding Breaches of the Development Management Agreements

 Defendants argue that the breach of contract claims contained in the Proposed Amended Complaint are insufficient to withstand a motion to dismiss because they fail to state with particularity the contractual terms allegedly breached. The essential elements of a claim for breach of contract under New York law are: (1) the existence of a contract; (2) due performance by plaintiff; (3) breach of the contract by defendant; and (4) damage as a result of the breach. *See R.H. Damon & Co. v. Softkey Software Products, Inc.*, 811 F.Supp. 986, 991 (S.D.N.Y.1993); *Stephens v. American Home Assurance Co.*, 811 F.Supp. 937, 959 (S.D.N.Y.1993). The plaintiff need not plead each element individually as long as the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); *Stephens v. American Home Assurance Co.*, 811 F.Supp. at 958; *Posner v. Minnesota Mining and Manufacturing Company, Inc.*, 713 F.Supp. 562, 563 (E.D.N.Y.1989).

In this case, plaintiff alleges the existence of fourteen Development Management Agreements, including four Jefferson Woods Agreements, three Tinker Bluff Agreements, and the Hallock Meadows Agreement. In addition, each cause of action for breach of contract pleads due performance of the contracts by plaintiff. Further, plaintiff alleges breaches of several contracts by defendants, including: failing to reimburse plaintiff for general and administrative costs; failing to pay subcontractors for work that was completed; selling several of the lots that were part of the Tinker Bluff Property to another builder without prior notice to plaintiff; contacting individuals who had contracted with plaintiff and advising them to contact another builder regarding the purchase of the lots; ordering plaintiff to stop work without complying with the contracts' specified termination procedures; and preventing the transfer of title to undeveloped lots which plaintiff had acquired the right to purchase from defendants. Finally, plaintiff has alleged damage as a result of defendants' breaches, including lost revenues and profits, unreimbursed administrative and general costs, and the balance due under the September 1991 Stipulation and Order.

In addition, defendants' arguments concerning the merit of these claims are not properly addressed on a motion to dismiss. The validity and substance of plaintiff's contentions "are left to the discovery process and trial." *Stephens v. American Home Assurance Co.*, 811 F.Supp. at 959 (citing 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d, § 1259 (2d ed. 1990)). Accordingly, the court finds that plaintiff's breach of contract claims adequately plead each of the requisite elements under New York law and are sufficient to give defendants notice of the general nature of the relief sought.

### 2. Parties Who May Properly be Charged with Breach

 Defendants move to dismiss plaintiff's breach of contract claims against First Nationwide Bank because First Nationwide did not sign any of the Development Management Agreements at issue and therefore cannot be bound by them. However, plaintiff alleges that each of the signatories to the contracts was a subsidiary corporation or assignee under the domination and control of First Nationwide, and that First Nationwide was the "alter ego" of each of the other defendants. Plaintiff seeks to "pierce the corporate veil" to hold First Nationwide liable for the actions of its subsidiaries.

 In order to state a claim under an alter ego theory of liability, plaintiff must allege: (1) that First Nationwide exercised such complete domination over its subsidiaries in relation to the alleged breaches such that the other defendants had no separate will of their own; and (2) that this domination was used to commit a wrong against

plaintiff which proximately caused his injuries. *See American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Zinaman v. USTS New York, Inc.,* 798 F.Supp. 128, 132 (S.D.N.Y.1992); *Morris v. New York State Department of Taxation and Finance,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810–11, 623 N.E.2d 1157, 1160–62 (1993); *Chase Manhattan Bank v. 264 Water Street Associates,* 174 A.D.2d 504, 505, 571 N.Y.S.2d 281, 282 (1st Dept.1991); *Lowendahl v. Baltimore & Ohio Railroad Co.,* 247 A.D. 144, 157, 287 N.Y.S. 62 (1st Dept.), *aff'd,* 272 N.Y. 360, 6 N.E.2d 56 (1936).

▊▊▊ In order to establish the first element, control by the parent corporation, plaintiff may not rely on conclusory statements but must allege specific facts showing that it exercised dominion over the subsidiary. *See, e.g., Strojmaterialintorg v. Russian American Commercial Corp.,* 815 F.Supp. 103, 105 (E.D.N.Y.1993); *Zinaman v. USTS New York, Inc.,* 798 F.Supp. at 132. In determining whether the parent controls the subsidiary corporation, courts will examine factors such as:

"(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own."

*Carte Blanche (Singapore) PTE, Ltd. v. Diners Club International, Inc.,* 2 F.3d 24, 26 (2d Cir.1993) (citing *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991)).

In this case, the Proposed Amended Complaint ["Complaint"] alleges more than conclusory statements regarding First Nationwide's control over the other defendants. Plaintiff alleges that First Nationwide is either the sole shareholder of, or in common ownership with, each of the other defendants, and that the officers, directors and management of First Nationwide served as officers, directors and management of each of the other defendants. Complaint at ¶ 21. Further, plaintiff claims that First Nationwide created several subsidiaries and/or assignees in order to escape federal regulation of its investments, Complaint ¶ 2; that First Nationwide held itself out to be the only viable corporate entity in its dealings with plaintiff as if the other defendants did not exist, Complaint ¶ 21; and that First Nationwide took revenues from the development projects for its own account and paid expenses of the projects from its own account. Complaint ¶¶ 57, 73, 82. These allegations of failure to observe corporate formalities and commingling of funds are sufficient to establish the element of dominion and control necessary to pierce the corporate veil.

▊▊▊ However, in order to prevail under an alter ego theory of liability, plaintiff must also establish that First Nationwide, through its domination of its subsidiaries, "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice...." *Morris v. New York State Department of Taxation and Finance,* 603 N.Y.S.2d at 811, 623 N.E.2d at 1161. Here, plaintiff's allegation that First Nationwide created a network of subsidiary corporations for the purpose of avoiding federal regulation is sufficient to establish the fraud or wrong requirement. In addition, courts have pierced the corporate veil where the parent corporation caused its subsidiary to breach contracts to benefit the parent. *See Carte Blanche (Singapore) PTE, Ltd. v. Diners Club International, Inc.,* 758 F.Supp. 908, 918 (S.D.N.Y.1991). Accordingly, the court finds that the Proposed Amended Complaint states a cause of action

against defendant First Nationwide under an alter ego theory of liability.

### C. The Breach of Fiduciary Duty Claims

■ The Proposed Amended Complaint alleges that defendants breached fiduciary duties in connection with the Tinker Bluff Agreements and the Port Jefferson Woods Agreements. Defendants argue that these claims should be dismissed because plaintiff fails to allege the requisite elements of a joint venture giving rise to fiduciary relationships.

■ Under New York law, a joint venture is composed of the following four elements: (1) an agreement between the parties to create a joint venture; (2) sharing of profits and losses; (3) joint control of the business; and (4) contributions of property, skill or knowledge. Sound Video Unlimited, Inc. v. Video Shack Inc., 700 F.Supp. 127, 138 (S.D.N.Y.1988). See also Itel Containers International Corp. v. Atlanttrafik Express Service Ltd., 909 F.2d 698, 701 (2d Cir.1990); Mendelson v. Feinman, 143 A.D.2d 76, 77, 531 N.Y.S.2d 326, 328 (2d Dep't 1988). Intent to create a joint venture, as opposed to a simple contractual relationship, is crucial:

> The ultimate inquiry is whether the parties have so joined their property, interests, skills, and risks that for the purposes of the particular adventure, their respective contributions have become on and the commingled properties and interest[s] of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit.

Precision Testing Laboratories, Ltd. v. Kenyon Corporation of America, 644 F.Supp. 1327, 1349 (S.D.N.Y.1986) (quoting Sherrier v. Richard, 564 F.Supp. 448, 457 (S.D.N.Y. 1983)).

In this case, the Development Management Agreements specifically state that "Nothing in this Agreement shall make or constitute either party hereto the agent, partner or joint venturer of and with the

other party." See, e.g., Exhibit B to the Affidavit of Jack Campo in Support of Cross-Motion and in Opposition to Motion to Dismiss, sworn to February 21, 1994, Section 11.07.[2] Accordingly, plaintiff cannot rely on the Development Management Agreements to prove the existence of a joint venture with defendants. See, e.g., MA–ST Corporation v. Henson Associates, Inc., 1992 WL 5867 at *3, 1992 U.S.Dist. LEXIS 178 at *7–8 (S.D.N.Y. January 10, 1992).

■ However, a joint venture need not be in writing, see Ackerman v. Landes, 112 A.D.2d 1081, 1082, 493 N.Y.S.2d 59, 60 (2d Dep't 1985); therefore, plaintiff may be able to demonstrate the existence of a joint venture agreement with First Nationwide outside of the written contracts with the other defendants. Plaintiff alleges that he and First Nationwide formed a joint venture "for the purpose of the acquisition, subdivision and development of properties as single family residential developments." Proposed Amended Complaint at ¶ 18. He alleges that each was to contribute property, skill or knowledge in that First Nationwide was to contribute financing to obtain the property, and plaintiff was to construct and develop homes. Plaintiff further alleges that the venturers agreed to assume joint control over the project and to share profits and losses. Accordingly, plaintiff has alleged the requisite elements of a joint venture and has therefore stated a cause of action for breach of fiduciary duty.

### D. The Tort Claims

■ The Eighth Cause of Action in the Proposed Amended Complaint alleges defendants' tortious interference with contractual and business relations in connection with the Tinker Bluff and Port Jefferson Woods projects. Under New York law, the following elements are required to state a claim for tortious interference with contract: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a

---

**2.** Although plaintiff has attached only one of the Agreements to his motion papers, the Proposed Amended Complaint alleges that "The DMAs for all of the projects were virtually identical in terms and conditions." ¶ 22.

breach of the contract by a third party; and (4) damages caused by the breach. *See Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 541 (2d Cir.1989); *Ecolab, Inc. v. Paolo,* 753 F.Supp. 1100, 1113 (E.D.N.Y. 1991).

The standard for demonstrating tortious interference with business relations, or in other words, interference with a *prospective* contractual relationship, is somewhat more stringent. *See Pennsylvania Engineering Corp. v. Islip Resource Recovery Agency,* 710 F.Supp. 456, 464 (E.D.N.Y. 1989); *International Minerals and Resources, Inc. v. Pappas,* 761 F.Supp. 1068, 1075 (S.D.N.Y.1991). Plaintiff must allege that defendants interfered with business or economic relations between the plaintiff and a third party, either (1) with the sole purpose of harming the plaintiff; or (2) by dishonest, unfair or improper means. *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir.1987); *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 118 (E.D.N.Y.1993). "If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d at 269.

In this case, the Proposed Amended Complaint contains only the barest allegations relating to plaintiff's tort claims, stating that defendants "contacted parties with whom either the plaintiff was in contract to sell houses to or was negotiating to sell houses to and informed those people that plaintiff would not be building or completing their house." *See* ¶ 102. The Proposed Amended Complaint does not allege the existence of any specific contracts with identified third-parties or any particular actions taken by defendants to procure a breach, and therefore fails to state a cause of action for tortious interference with contract. Similarly, the Proposed Amended Complaint fails to state a cause of action for tortious interference with business relations because it does not allege facts which, if proven, would show that defendants acted solely to harm plaintiff and in no way to advance their own interests;

nor does it contain facts demonstrating criminal or fraudulent actions taken by defendants in furtherance of the alleged interference. Since the Proposed Amended Complaint fails to state a cause of action in tort, plaintiff will not be given leave to amend his claims of tortious interference.

### E. *Claim for Punitive Damages*

Generally, punitive damages are not available under New York law for a simple breach of contract. *See United States Naval Institute v. Charter Communications, Inc.,* 936 F.2d 692, 696 (2d Cir.1991); *Bausch & Lomb, Inc. v. Sonomed Technology, Inc.,* 780 F.Supp. 943, 973 (E.D.N.Y.), *aff'd in part,* 977 F.2d 720 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Productions,* 861 F.2d 363 (2d Cir.1988)). Such an award is not appropriate where an isolated breach is at issue, even if it was willful and without justification. *See Saint Calle v. Prudential Insurance Company,* 815 F.Supp. 679, 688 (S.D.N.Y.1993). A plaintiff is entitled to punitive damages only where defendants' conduct constitutes "gross, wanton, or willful fraud or other morally culpable conduct", *Borkowski v. Borkowski,* 39 N.Y.2d 982, 983, 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976), regardless of whether it was directed at the public generally. *See Action S.A. v. Marc Rich & Company, Inc.,* 951 F.2d 504, 509 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992); *Parke–Hayden Corp. v. Loews Theatre Management,* 789 F.Supp. 1257, 1268 (S.D.N.Y. 1992).

In this case, plaintiff has not pleaded with particularity any gross fraud or other morally culpable conduct. Plaintiff claims that defendants' actions were directed at the public because defendants actions affected a large number of people, including purchasers and contractors. However, he fails to state particular facts demonstrating how the alleged breaches of contract harmed any specific individual other than himself. Accordingly, plaintiff's demand for punitive damages on his breach of contract claims must be stricken.

However, plaintiff may be entitled to punitive damages if he prevails on the breach of fiduciary duty claims. *See, e.g., Kubin v. Miller,* 801 F.Supp. 1101, 1122 (S.D.N.Y. 1992). Since the Proposed Amended Complaint states a cause of action against defendants for breach of fiduciary duty, the demand for punitive damages will be not stricken as to those claims.

### CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss the complaint is DENIED. Plaintiff's motion to amend the complaint is GRANTED, with the exception of the claims for tortious interference with contract and business relations, which are DISMISSED. In addition, plaintiff's demand for punitive damages on his contract claims is DISMISSED. Finally, plaintiff is granted leave to file the Proposed Amended Complaint, subject to the limitations previously stated, within ten days of receipt of this order.

SO ORDERED.