Peter J. CLARKE, Edward J. Dixon, Brian R. Fisher, and Paul J. Wheeler, Plaintiffs,

v.

TRW, INC., Defendant.

No. 93–CV–1524 (FJS).

United States District Court, N.D. New York.

April 9, 1996.

Office of Edward A. Kiley, Ann Tarpinian, Edward A. Kiley, Rochester, New York, for Plaintiffs.

Bond, Schoeneck & King, John Gaal, Syracuse, New York, for Defendant.

## DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This is an action under New York's whistleblower law, N.Y.Lab.Law § 740. The plaintiffs in this action are former employees of defendant TRW, Inc., who, among other things, manufactures automobile parts which are sold to automobile manufacturers for installation in finished automobiles. Plaintiffs allege that TRW retaliated against them in response to their identification of manufacturing practices that they claim present a substantial danger to public health and safety.[1] Jurisdiction is based upon diversity of citizenship. *See* 28 U.S.C. § 1332.

Plaintiffs commenced this action in November 1993 in New York State Supreme Court, Cayuga County. TRW removed the

1. Plaintiffs admit that they "are not alleging an independent claim under [the National Traffic and Motor Vehicle Safety Act,] NTMVSA. [They] are merely identifying TRW's violation of NTMVSA, as required to support their Labor Law 740 claim." Plaintiffs' Opp'n Memo., 1.

action, answered the complaint, and moved for judgment on the pleadings under Fed. R.Civ.P. 12(c). By Decision and Order entered October 26, 1994, this Court granted TRW's motion finding that plaintiffs had failed to identify any law, rule, or regulation that allegedly was violated by TRW's conduct. However, the Court stayed entry of the Order and granted plaintiffs thirty days to replead. Plaintiffs filed an amended complaint alleging violations of the National Traffic and Motor Vehicle Safety Act ("NTMVSA") as the predicate for their claims under N.Y.Lab.Law § 740.

Presently before the Court are defendant's motion to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(6) and plaintiffs' cross-motion for leave to file a second amended complaint. The court heard oral argument on these motions at its March 23, 1995 motion calendar and reserved decision at that time.

## Background

There are four plaintiffs in this action, each of whom alleges separate but related retaliation by TRW for his role in bringing the alleged safety violations to light. The facts set out below are derived from the Proposed Second Amended Complaint ("Proposed Complaint").

TRW hired (1) plaintiff Peter J. Clarke as a Senior Tool Design Engineer in November 1991; (2) plaintiff Edward J. Dixon in June 1992 as a Junior Tool Designer; (3) plaintiff Brian R. Fisher in February 1989 as an Electrical Test Engineer;[2] and (4) plaintiff Paul J. Wheeler in December 1991 as a Controls Engineer. Proposed Complaint ¶¶ 17, 20, 23, 27.

Clarke, Dixon, Fisher, and Wheeler were responsible for testing the safety effectiveness of various automobile parts TRW was manufacturing, assembling, and shipping to its customers including Ford, Chrysler, Carter Manufacturing, and Federal Mogul. Proposed Complaint ¶¶ 18, 21, 24, 28. Plaintiffs' allegations concern their work on two partic-

ular projects: the Carter RFI Module and the Ford ISO Relay.

## A. The Carter RFI Module Project

TRW manufactured a family of assembled products, known as the RFI Module, for its customer Carter Manufacturing. Plaintiffs Clarke, Dixon, and Wheeler were involved in the manufacture of the RFI Module.

> The RFI Module is ... manufactured by TRW's Union Springs Facility. It is a subassembly, or more appropriately, a fuel outlet nozzle for an electrical fuel pump. The RFI [Module] primarily functions as a fuel outlet nozzle and it has built-in capacitors which minimize sparking and prevent any leaked gasoline from igniting.

Proposed Complaint, ¶ 31.

Carter Manufacturing specified that the RFI Module "must" be tested by TRW at 100% capacitance value. Amended Complaint, ¶ 16; Proposed Complaint ¶ 32. Plaintiffs allege that TRW consistently tested the modules at less than a 100% capacitance level, allowing allegedly defective modules to be installed in fuel pumps and, ultimately, finished automobiles. Proposed Complaint ¶ 32.

In addition to improper testing, plaintiffs also allege that the RFI Module terminal was manufactured beyond prescribed tolerance limits, frequently resulting in cracks in the component. Proposed Complaint ¶¶ 42–44. Plaintiffs contend that TRW consistently "ignored the fact, verified with x-ray equipment, that the manufacturing process itself caused the internal capacitors to crack, rendering the capacitors incapable of suppressing motor brush sparks" which can lead to vehicle fires. Proposed Complaint ¶¶ 44, 51–52.

From May 1992 until their termination,[3] Clarke and Wheeler continued to advise their supervisors and other TRW managers of the deficient RFI Module testing and manufacturing process. Plaintiff Dixon alleges that he supported Clarke and Wheeler in their efforts to convince TRW to properly test and

---

**2.** TRW's predecessor hired plaintiff Fisher.

**3.** Clarke was terminated on December 8, 1992. Proposed Complaint ¶ 19. Wheeler was termi-

nated on April 12, 1993. Proposed Complaint ¶ 22.

manufacture the components. Proposed Complaint ¶ 29. Plaintiffs further allege that TRW managers who were confronted by plaintiffs ignored or refused to remedy the problems and consistently instructed plaintiffs to do the same. Proposed Complaint ¶¶ 14, 34–35, 38, 41, 43, 45, 49–51, and 54. These managers included Kevin Wilson, David Miller, Endy China, and Larry Turner. Proposed Complaint ¶¶ 34, 38, 56, 121. Clarke claims he also spoke to the Carter engineer responsible for the RFI product line, who indicated that defective RFI Modules had been responsible for motor vehicle accidents. Proposed Complaint ¶ 58.

## B. The Ford ISO Relay Project

TRW manufactured a relay known as the ISO relay for its customer Ford Motor Company. Plaintiffs Fisher and Wheeler were involved in the manufacture of the ISO Relay.

A relay is an electro-mechanical switch [that] consists of a wire wound solenoid that is energized to move contacts. The contacts act as switches to provide electrical energy to desired locations of a motor vehicle. An example would be to provide battery power to a vehicle's headlights. The ISO relay is the International Standards Organization Relay, manufactured as a general purpose device due to its ISO terminal layout. This particular relay lends itself to many applications within a vehicle. Its uses include control of anti-lock brakes, the fuel pump, EEC command modules, headlights, windshield wipers, and ignition.

Proposed Complaint, ¶ 59.

In late 1990, plaintiff Wheeler alleges he investigated a defect in the software that controlled the ISO Relay manufacturing equipment. Proposed Complaint ¶ 60. Plaintiffs allege that this defect caused a corresponding defect in the relays which could result in relay failure, placing a motor vehicle driver in danger. Proposed Complaint, ¶ 61. They further claim that one of every two defective relays were distributed for installation in automobiles. Proposed Complaint, ¶ 62.

In early 1991, plaintiff Fisher claims he discovered that the equipment testing the ISO Relays was defective and had been adjusted to report false measurements. Proposed Complaint, ¶¶ 66–67. The Proposed Complaint also identifies further problems in the relay testing process. Proposed Complaint ¶¶ 71–81.

Fisher and Wheeler reported their findings and urged correction of the problems in the same manner, and with the same frequency, that plaintiffs Clarke, Dixon, and Wheeler reported defects in the Carter RFI Module process. Plaintiffs claim that TRW managers Wilson, Miller, Jeff Brennen, China, Howard Knicely, Richard Sneed, and others again refused to remedy the problems and developed testing procedures designed to pass defective products on to Ford. Proposed Complaint ¶¶ 88, 90, 95–99, 113. It is further claimed that ISO Relays are found in many vital parts of an automobile. When, for instance, the ISO Relay in a braking system malfunctions, the brakes are affected and the driver loses vehicle control. Proposed Complaint, ¶ 12.

## C. Retaliation

Plaintiffs allege that TRW retaliated against them in response to their repeated warnings that defects in the testing and manufacturing process, RFI Modules, and ISO relays implicated safety concerns. This alleged retaliation took multiple forms. Clarke and Wheeler were both terminated. Proposed Complaint ¶ 19, 22. Fisher was demoted and forced to take medical leave due to physical manifestations of the pressure exerted on him by TRW. Additionally, TRW employees gave Fisher a false and damaging job recommendation, and actively opposed his worker's compensation claim. Proposed Complaint ¶¶ 24–26, 86. Plaintiff Dixon was also forced to take medical leave due to physical manifestations of the pressure exerted by TRW, and he was denied promotion because he supported the other plaintiffs. TRW also opposed Dixon's worker's compensation claim. Proposed Complaint ¶¶ 29–30.

### Discussion

As stated, before the Court are TRW's motion to dismiss the complaint under Rule

12(b)(6) and plaintiffs' cross-motion for leave to file a second amended complaint. The Court will first consider plaintiffs' cross-motion.

### A. Cross–Motion to Amend the Complaint

Federal Rule of Civil Procedure 15 provides that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The decision to grant or deny leave to amend lies within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In deciding whether to grant plaintiffs leave to file a second amended complaint, the court must evaluate several factors: (1) whether the amendment is proposed in good faith; (2) whether amendment would cause undue delay; (3) the extent to which amendment would prejudice the opposing party; (4) whether plaintiff has previously amended his complaint; and (5) futility of amendment. *See Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Although TRW asserts that all of these factors militate against amendment in this case, it primarily contends that leave to replead should be denied because of plaintiffs' previous opportunity to amend the complaint and the futility of further amendment. Def's Opp'n Memo., 2–3.

### 1. Plaintiffs' Previous Amendment

Although the defendant characterizes the Proposed Complaint as "Complaint IV," the Proposed Complaint would be the second amended complaint and, thus, the third complaint filed in this case in federal court. The cases defendant cites in opposition to plaintiffs' cross-motion are either inapposite or involve far more egregious circumstances than those presented here. *See Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 951–52 (S.D.N.Y.1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984) (proposed complaint alleged entirely new theory of liability for the first time in complaint that would have been plaintiff's third amendment); *State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409, 410, 418 (2d Cir.1990) (plaintiff sought to allege new theories of law after judgment had been entered dismissing the complaint); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990) (proposed complaint would have been plaintiff's third amended complaint and asserted a cause of action based upon a new legal theory).

The Court is mindful of the guiding principle that where "the underlying facts or circumstances ... may be a proper subject of relief, [plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Therefore, *barring futility of amendment*, none of the factors in this case weigh so heavily against the plaintiffs as to merit denial of leave to replead.

### 2. Futility of Amendment

"Although leave to amend 'shall be freely given,' it is inappropriate to grant leave when the amendment would not survive a motion to dismiss." *Prudential Ins. Co. v. BMC Indus., Inc.*, 655 F.Supp. 710, 711 (S.D.N.Y.1987); *see also Campo v. 1st Nationwide Bank*, 857 F.Supp. 264, 269 (E.D.N.Y.1994); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991). Accordingly, the court will evaluate the Proposed Complaint under the standards applicable to a motion to dismiss under Fed. R.Civ.P. 12(b)(6). Plaintiffs' cross-motion for leave to file an amended complaint will be granted and defendant's motion to dismiss denied if plaintiffs' Proposed Complaint would survive a motion to dismiss. *See Campo*, 857 F.Supp. at 269, 274.

In evaluating a motion to dismiss for failure to state a claim, the court must "accept as true all the factual allegations in the complaint" and draw all reasonable inferences in favor of the plaintiffs. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 163, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992). "[T]he court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'" *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### a. The Elements of a Cause of Action Under N.Y. Lab. Law § 740

The plain text of N.Y.Lab.Law § 740 requires that, in order to state a cause of action, a plaintiff must allege facts supporting the conclusion that (1) he was subject to a retaliatory personnel action after (2) disclosing to a supervisor (3) a practice of the employer that is in violation of a law, rule, or regulation (4) that creates and presents a substantial and specific danger to the public health or safety.

The parties do not dispute that the Proposed Complaint contains sufficient allegations that (1) plaintiffs were subject to retaliatory personnel actions and, (2) that they disclosed the practices at issue to their supervisors. Rather, the gravamen of the parties' dispute focuses on the third and fourth elements.

The controversy over these elements centers on whether plaintiffs must allege facts supporting the conclusions (1) that an actual violation of a law, rule, or regulation occurred and (2) that the practice in violation of the law presented an actual danger to the public health or safety.

### b. Third Element: Violation of a Law, Rule, or Regulation

Defendant correctly notes that this Court's prior Decision and Order did not expressly address whether plaintiffs must allege an actual violation of a law, rule, or regulation. Although the relevant section in that Order was entitled "Actual Violations," it held only that "plaintiffs need not *show an actual hazard to public health or safety* to state a claim for violation of Section 740." *Clarke v. TRW,* No. 93–CV–1524, 1994 WL 591677, *6 (N.D.N.Y. Oct. 26, 1994) (emphasis supplied).

■ However, it has been clearly established that plaintiffs must plead an actual violation of a law, rule, or regulation to state a claim under § 740. *Remba v. Federation Employment and Guidance Serv.,* 149

A.D.2d 131, 135, 545 N.Y.S.2d 140 (1st Dep't 1989), *aff'd,* 76 N.Y.2d 801, 559 N.Y.S.2d 961, 559 N.E.2d 655 (1990); *Bordell v. General Electric Co.,* 208 A.D.2d 219, 220–22, 622 N.Y.S.2d 1001 (3d Dep't 1995); *Connolly v. Harry Macklowe Real Estate Co., Inc.,* 161 A.D.2d 520, 555 N.Y.S.2d 790 (1st Dep't 1990); *Kern v. De Paul Mental Health Servs., Inc.,* 139 Misc.2d 970, 973, 529 N.Y.S.2d 265 (Sup.Ct. Monroe County 1988); *Criado v. ITT Corp.,* No. 92 Civ. 3552, 1993 WL 17305, *2 (S.D.N.Y. Jan. 19, 1993) (Freeh, J.). Plaintiffs' Proposed Complaint alleges violations of several different provisions of the National Traffic and Motor Vehicle Safety Act ("NTMVSA") as the predicate for their claims under N.Y.Lab.Law § 740. These provisions include 49 U.S.C. §§ 30118(c)(1) and 30116(a)(1); 49 C.F.R. Section 571.301, the standard for Fuel System Integrity; 49 C.F.R. Section 571.105, the Hydraulic Brake System standard; and 49 U.S.C. §§ 30112, 30115, and 30122(b). Proposed Complaint, ¶¶ 10–13. These individual statutes and regulations under the NTMVSA are examined separately below.

### (i) Allegations under 49 U.S.C. §§ 30116 and 30118

■ The Proposed Complaint alleges that the practices of TRW violated 49 U.S.C. §§ 30116 and 30118. Section 30116, entitled "Defects and noncompliance found before sale to purchaser," provides that once it is determined that motor vehicle equipment "contains a defect related to motor vehicle safety," the manufacturer "shall repurchase the equipment at the price paid by the distributor or dealer." 49 U.S.C. § 30116.

Section 30118, entitled "Notification of defects and noncompliance," provides that once a manufacturer of motor vehicle equipment learns that the equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety, the manufacturer must notify the Secretary of Transportation and owners, dealers, and purchasers of the defect. 49 U.S.C. § 30118.

A "'defect' includes any defect in performance, construction, a component, or material of a motor vehicle or motor vehicle equipment." 49 U.S.C. § 30102(a)(2). Citing

cases in which courts were analyzing performance defects, TRW submits that " 'a vehicle or component contains a defect if it is subject to a significant number of failures in normal operation....' " *United States v. General Motors Corp.*, 841 F.2d 400, 404 (D.C.Cir. 1988) ("*Brakes*") (citing *United States v. General Motors*, 518 F.2d 420, 427 (D.C.Cir. 1975) ("*Wheels*")) (internal quotations and citations omitted). Further, a significant number of failures means "a number of failures that is 'non-de minimis.' " *Brakes*, 841 F.2d at 404 (citation omitted). Thus, defendant contends, a party asserting a defect must plead and prove a significant number of actual vehicle failures. *See Brakes*, 841 F.2d at 412. Because plaintiffs fail to allege that the Carter RFI Module or the Ford ISO Relay have been involved in any actual failures in normal operation, defendant contends that plaintiffs have failed to allege a violation under either § 30116 or § 30118.

The cases cited by TRW all concern *performance* of the components or vehicles, as found in the NTMVSA's definition of defect. However, "defect" includes a defect in the construction and material of components as well as performance. This case is still in the pre-discovery phase, and the Court must draw all reasonable inferences in favor of plaintiffs. Plaintiffs' complaint is replete with allegations that both the Carter RFI Module and the Ford ISO Relay suffered from fundamental construction and testing defects. Accordingly, this Court finds that the Proposed Complaint is sufficient to allege a defect in the Carter RFI Module and the Ford ISO Relay as defined in 49 U.S.C. § 30102(2) because that definition includes defects in construction or material of vehicle components.

Further, TRW contends that plaintiffs fail to plead a violation of § 30116 or § 30118 because their allegations do not justify the inference that the allegedly defective products are "related to motor vehicle safety." [4] 49 U.S.C. §§ 30116, 30118. " '[M]otor vehicle safety' means the performance of ... motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident...." 49 U.S.C. § 30102(a)(8).

The word "unreasonable" implicates a " 'commonsense' balancing of safety benefits and economic cost." *Wheels*, 518 F.2d at 435. Such balancing is implicated only when "the risk appears 'significant,' based both on [the] severity [of the risk] and [the] relative frequency [with which it is encountered]." *United States v. General Motors Corp.*, 656 F.Supp. 1555, 1579 (D.D.C. 1987) ("*Brakes*"). An unreasonable risk, then, is "a significant risk that can be remedied at a proportionate cost, and without a corresponding sacrifice of public safety." *Brakes*, 656 F.Supp. at 1579.

Defendant contends that because plaintiffs offer no factual allegations as to the magnitude of the risk, its frequency, or the costs of corrections, dismissal is warranted. While it may be that plaintiffs' proof must ultimately meet the above standards, a complaint need only set forth "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)).

> [W]here a defect ... used in the sense of an "error or mistake" has been established in a motor vehicle, and where this defect results in hazards as potentially dangerous as a sudden engine fire, and where there is no dispute that at least some such hazards ... can definitely be expected to occur in the future, then the defect must be viewed as one "related to motor vehicle safety."

*United States v. General Motors Corp.*, 565 F.2d 754, 758 (D.C.Cir.1977) ("*Carburetors*"). Where it is alleged that a defect "is systematic and prevalent in a particular class [of motor vehicle equipment], * * * this is prima

4. This argument refers to the statutory requirement and not to the fourth element of plaintiffs' N.Y.Lab.Law § 740 cause of action, which will be discussed below.

facie ... unreasonable risk." *United States v. General Motors Corp.*, 561 F.2d 923, 929 (D.C.Cir.1977) (*"Pitman Arms"*). "Such a defect may be identified by ... tests showing that failure is likely under normally encountered circumstances." *Pitman Arms,* 561 F.2d at 929. The Proposed Complaint's allegations of systematic defects in both the Carter RFI Module and the Ford ISO Relay are sufficiently related to motor vehicle safety to plead a violation of the statutes. Therefore, to the extent that the Proposed Complaint relies upon 49 U.S.C. §§ 30116 and 30118 as the predicate to the section 740 claim, plaintiffs' motion for leave to amend is GRANTED and defendant's motion to dismiss is DENIED.

*(ii) Allegations under the Safety Regulations*

■ Plaintiffs allege that the practices of TRW resulted in the violation of two regulations promulgated under the NTMVSA—49 C.F.R. § 571.105 relating to motor vehicle brake systems and 49 C.F.R. § 571.301 relating to fuel system integrity.[5] The applicability of a safety regulation to a vehicle or component is governed by 49 C.F.R. § 571.7 which provides that "each standard ... applies *according to its terms* to all motor vehicles *or* items of motor vehicle equipment."

By their terms §§ 571.105 and 571.301 apply only to finished vehicles.[6] Because this action involves component parts and not finished vehicles these regulations cannot form the basis of plaintiffs' claim that defendant violated an actual rule or regulation. Therefore, to the extent that the Proposed Complaint relies upon 49 C.F.R. §§ 571.105 and 571.301 as the predicate to the section 740

claim, plaintiffs' motion for leave to amend is DENIED and defendant's motion to dismiss is GRANTED.

*(iii) Allegations under 49 U.S.C. §§ 30112, 30115, and 30122(b)*

■ Plaintiffs further allege that the practices of TRW resulted in the violation of three additional provisions of the NTMVSA—49 U.S.C. § 30112, prohibiting the manufacture, sale, or import of noncomplying motor vehicles and equipment; 49 U.S.C. § 30115, concerning certification of compliance with safety regulations; and 49 U.S.C. § 30122 concerning the disablement of safety devices and elements. However, these provisions do not apply unless the "motor vehicle safety standard[s]" are involved. 49 U.S.C. §§ 30112(a), 30115, 30122(b). Because the only motor vehicle safety standards allegedly applicable to TRW (49 C.F.R. § 571) cannot apply, plaintiffs cannot proceed on this basis. Therefore, to the extent that the Proposed Complaint relies upon 49 U.S.C. §§ 30112, 30115, or 30122 as the predicate to the section 740 claim, plaintiffs' motion for leave to amend is DENIED and defendant's motion to dismiss is GRANTED.

**c. Danger to the Public Health or Safety**

■ Finally, plaintiffs' allege that the practices of TRW with respect to the Carter RFI Module and the Ford ISO Relay would lead to gasoline fires and loss of vehicle brake control. Both obviously pose a specific and substantial risk to the health and safety of the public. *See, e.g.,* Proposed Complaint ¶¶ 12, 31, 32, 44, 51, 52, 58, 59, 61, 80, 81, and 88. The Proposed Complaint is sufficient

---

**5.** In their memorandum in support of their cross motion, plaintiffs allege for the first time that defendant's practices also violated 49 C.F.R. §§ 571.208 and 571.209. This is not alleged in the Proposed Complaint and will not be considered by the Court. *See Festa v. Local 3 Int'l Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). Additionally, the Court notes that further attempts at amendment will be subject to very strict scrutiny as the risk of substantial prejudice to the defendant grows.

**6.** Section 571.105 "applies to passenger cars, multipurpose passenger vehicles, trucks, and buses with hydraulic service brake systems." 49

C.F.R. § 571.105(S3). Likewise, section 571.301 "applies to passenger cars, and to multipurpose passenger vehicles, trucks and buses ... and to school buses...." 49 C.F.R. § 571.301(S3).

Other regulations apply specifically to component parts and/or systems. For example section 571.106 "applies to passenger cars, multipurpose passenger vehicles, trucks, buses, trailers, motorcycles, *and to hydraulic, air and vacuum brake hose, brake hose assemblies, and brake hose end fittings for use in those vehicles."* 49 C.F.R. § 571.106(S3); *see also* 49 C.F.R. §§ 571.116 and 571.119.

with respect to this element of an action under N.Y.Lab.Law § 740. Therefore, defendant's motion to dismiss on this element is DENIED and plaintiffs' motion for leave to amend is GRANTED.

### 3. Plaintiffs' Request for Punitive Damages and a Jury Trial

 In both the Amended and Proposed Complaint plaintiffs include a demand for punitive damages in the amount of $2,000,-000. Amended Complaint, ¶ 75F; Proposed Complaint, 26. However, punitive damages are not included in the list of exclusive remedies found in N.Y.Lab.Law § 740(5). *Hoffman v. Altana, Inc.*, 198 A.D.2d 210, 211, 603 N.Y.S.2d 499 (2d Dep't 1993); *Gruenewald v. 132 W. 31st St. Realty Corp.*, 205 A.D.2d 498, 613 N.Y.S.2d 39 (2d Dep't 1994).[7] Therefore, to the extent that plaintiffs seek punitive damages, plaintiffs' cross-motion for leave to amend is DENIED, and defendant's motion to dismiss is GRANTED.

Although plaintiffs' Amended Complaint contained a demand for a jury trial which does not appear in the Proposed Amended Complaint, plaintiffs are not entitled to a jury trial. *Majer v. Metropolitan Transportation Auth.*, No. 90 Civ. 4608, 1992 WL 110995 (S.D.N.Y. May 7, 1992).

### Conclusion

After carefully considering the parties' submissions, oral argument, and the governing law, it is hereby

ORDERED, that plaintiffs' motion for leave to amend their complaint is GRANTED to the extent that the Proposed Complaint alleges a cause of action under N.Y. Labor Law § 740 based upon violations of 49 U.S.C. §§ 30116(a)(1) and 30118(c)(1) as predicate acts under the statute. It is further

ORDERED, that plaintiffs' motion for leave to amend is DENIED to the extent that the plaintiffs rely upon 49 U.S.C. §§ 30112, 30115, or 30122, or upon 49 C.F.R. §§ 571.105 and 571.301, as the predicate to

their claim under N.Y.Lab.Law § 740. It is further

ORDERED, that plaintiffs' motion for leave to amend is DENIED to the extent that the plaintiffs' pleadings seek punitive damages and demand a jury trial. It is further

ORDERED, that defendant's motion to dismiss is DENIED. It is further

ORDERED, that plaintiffs file an amended complaint that is consistent with this Decision and Order within forty-five days of the entry of this Order.

**IT IS SO ORDERED.**

---

7. Although plaintiffs' complaints also mention the NTMVSA in connection with their request for punitive damages, as noted above, plaintiffs state that their pleadings do not contain an independent cause of action under the NTMVSA.