OPINION OF THE COURT
Jerald S. Carter, J.
In an action for relief pursuant to section 740 of the Labor Law and to recover damages for alleged breach of contract and defamation, defendants move for summary judgment dismissing the complaint and for an order imposing sanctions and awarding attorney’s fees, and plaintiff moves for leave to serve an amended complaint.
Plaintiff was an attending podiatrist at defendant Sunharbor Manor Residential Health Care Facility (Sunharbor). He was never remunerated in any manner by Sunharbor but billed the residents for his services directly. Although plaintiff claims that there was a written employment agreement, he fails to produce one, and his claim that further disclosure may produce the written employment agreement is nothing more than speculation.
Plaintiff’s privileges at Sunharbor were terminated in February 1996 on the grounds that he improperly billed the families of residents for services rendered to residents covered by Medicare; that he failed to abide by the protocols of Sunharbor regarding the prevention of the spread of infection; that he improperly refused to provide treatment for nonpayment of past services or because he would be receiving only nominal payment; that he had failed to timely record his notes of treatment in the residents’ records; that he had behaved inappropriately in interacting with residents; that he had treated a resident without the prior written consent of a relative of the resident in contravention of a written release; and that he inaccurately described the mental state of residents in their records. These grounds for termination were considered on a cumulative basis by Sunharbor, having developed over the course of several years. Prior to termination, plaintiffs privileges were first suspended and his resignation was requested. Sunharbor also scheduled a meeting with plaintiff for February 14, 1996. On February 13, 1996, however, plaintiff canceled the meeting on advice of counsel. Sunharbor then advised plaintiff in writing that unless his resignation was received by the end of February, his privileges would be terminated. In March 1996, plaintiff entered Sunharbor to treat certain residents. He was advised that his privileges had been *850 terminated. He then orally requested a hearing and was instructed to place such request in writing. Plaintiff requested a hearing in writing on March 13, 1996. A hearing was never held.
After termination by Sunharbor, plaintiff applied for privileges at Hempstead General Hospital Medical Center (Hempstead General). Hempstead General, in considering plaintiff’s application, made a written request of Sunharbor for information pursuant to Public Health Law § 2805-k.[1] Specifically, Hempstead General inquired whether plaintiff’s privileges had ever been suspended or terminated. Sunharbor responded: “ [privileges have been suspended/terminated due to several and varied reasons”. Hempstead General then requested the details of plaintiff’s suspension/termination and included “Consent for Release of Information” executed by plaintiff. On July 1, 1996, Sunharbor responded as follows:
“As per discussion, Dr. Rotwein is in the process of having his privileges at Sunharbor Manor revoked. As I explained, we are not challenging his podiatric medicine. We had a few cases where residents and their families were not pleased with his bedside manner. We requested his resignation which he did not wish to do.
“Again, the reason for his dismissal is due to his relationship with staff, families and residents and in no way is meant as a reflection upon his podiatric medicine.”
Thereafter, plaintiff commenced this action. In his complaint, he asserts 12 causes of action falling within three groups: (1) unlawful retaliatory discharge under Labor Law § 740; (2) breach of contract (second and third causes of action); and (3) defamation (fourth through twelfth causes of action, inclusive). Defendants now move for summary judgment dismissing all causes of action, and plaintiff moves for leave to serve an amended complaint withdrawing the first cause of action, withdrawing all allegations of specific communications except with respect to residents’ complaints regarding plaintiff’s bedside manner, and adding all individual partners of Sunharbor as defendants.
The first cause of action is based on an alleged violation of section 740 of the Labor Law, commonly referred to as the Whistleblower Law (Remba v Federation Empl. & Guidance Serv., 76 NY2d 801). Insofar as may be relevant to this matter, Labor Law § 740 (2) (a) and (c) provides:
*851 “An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:
“(a) discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety * * *
“(c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.” Plaintiff alleges that Sunharbor directed him to refrain from billing or attempting to collect from residents’ families, Medicare deductibles and co-payments or co-insurance, that he advised Sunharbor that such practice would be illegal, and that Sunharbor then terminated his privileges on the pretext that he had not been complying with the infection control program and that he had acted inappropriately toward residents.
At the core of any viable claim based on Labor Law § 740 is that there must have been an employer-employee relationship. In Labor Law § 740 (2), the proscription is against retaliatory action by an employer against an employee. Section 740 (1) (a) defines an employee as “an individual who performs services for and under the control and direction of an employer for wages or other remuneration.” Here, there is no evidence that Sunharbor controlled and directed the care and treatment provided by plaintiff to residents. Protocols and policy regarding appropriate behavior, infection control and billing practices do not represent control of care and treatment of residents. Further, it is undisputed that plaintiff never received any remuneration or other benefit from Sunharbor. Plaintiff billed the residents for his services directly. There is also no evidence of a written employment contract as plaintiff urges, and his contention that disclosure may yield such document is nothing more than speculation. Under these circumstances, plaintiff may not avail himself of the remedies provided by Labor Law §740.
A claim under Labor Law § 740 also must be premised on an actual violation of law, rule or regulation; a reasonable belief of a violation is not enough (see, Bordell v General Elec. Co., 88 NY2d 869). Therefore, assuming plaintiff’s allegations regarding Sunharbor’s direction regarding billing are true, i.e., that plaintiff refrain from seeking payment of deductibles or co-payments/co-insurance, such direction must constitute an *852 actual violation of law, rule or regulation. Plaintiff alleges that such direction violated 18 USC §§ 287 and 1001, 31 USC § 3729, 42 USC §§ 1320a-7a, 1320a-7b (b) and § 1320a-7 (b) (7). These statutes generally prohibit the making of false claims and statements and, specifically, prohibit illegal remuneration in the form of kickbacks. Plaintiff, however, does not offer any evidence that Sunharbor obtained or sought to obtain some illegal remuneration or kickback. Proscribing any attempt to collect deductibles or co-payments/co-insurance from relatives of a resident, under these circumstances, meant only that payment would be sought from the resident. If the resident was unable to pay, then, perhaps, payment of the deductibles or co-payments/co-insurance would be lost, but that was not tantamount to a kickback. No actual violation of law, rule or regulation, therefore, has been shown.
Assuming that the alleged practice plaintiff contends Sun-harbor directed plaintiff to follow constituted an actual violation of law, rule or regulation, it would not support a claim under Labor Law § 740, unless it presented a substantial and specific danger to the public health and safety (see, Labor Law § 740 [2] [a]; Remba v Federation Empl. & Guidance Serv., 76 NY2d 801, supra [fraudulent billing practices do not constitute a substantial and specific danger to the public health and safety]; Kraus v New Rochelle Hosp. Med. Ctr., 216 AD2d 360, 365, lv dismissed 86 NY2d 885, reconsideration denied 87 NY2d 862 [“failure to properly document and/or obtain informed consents for a procedure which can be fatal created a substantial and specific danger to the public health and safety”]). Such practice, however, did not present a substantial and specific danger to the public health and safety (see, Lamagna v New York State Assn. for Help of Retarded Children, 158 AD2d 588 [fiscal improprieties does not present a substantial and specific danger]; Easterson v Long Is. Jewish Med. Ctr., 156 AD2d 636, lv denied 76 NY2d 704 [disclosure of medical records does not threaten health and safety of public at large]; Leibowitz v Bank Leumi Trust Co., 152 AD2d 169 [fraudulent banking activities]).
After review of plaintiffs retaliatory discharge claim, the court finds not only that there is no merit in the claim and that it should be dismissed as a matter of law, but also that it lacks even any arguable merit and that such lack of merit should have been apparent at the commencement of the action. In these circumstances, Labor Law § 740 (6) permits the court, in its discretion, to award defendants reasonable attorney’s fees, costs and disbursements. In this regard, the court has *853 considered the fact that plaintiff did attempt to withdraw the first cause of action in September 1998, although ineffective because a discontinuance of a claim can be effected only by order of the court or stipulation (see, CPLR 3217), and that the action had been pending in excess of a year as of that time and involved disclosure relative to the alleged retaliatory discharge. The court also has considered that plaintiff has now formally moved to discontinue the first cause of action by seeking leave to serve an amended complaint dropping such claim. Plaintiff, however, may not be motivated solely by some desire to acknowledge, albeit late, that the first cause of action lacks merit. Instead, he may be attempting to avoid the waiver language of Labor Law § 740 (7), that provides: “Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law.” According to the plain language of this provision, a retaliatory discharge claim under Labor Law § 740 forecloses the assertion of any other claims or remedies relating to the discharge. By dropping the Labor Law § 740 cause of action, plaintiff is seeking to preserve his remaining breach of contract and defamation causes of action.
Defendants contend that plaintiff may not circumvent the statutory waiver provision by now discontinuing the retaliatory discharge claim, for Labor Law § 740 (7) triggers the waiver when the action is instituted. Accordingly, they further contend the waiver may not be voided or nullified by a later discontinuance or dismissal of the claim prior to judgment. Plaintiff argues to the contrary, relying on Clarke v TRW, Inc. (1994 US Dist LEXIS 15423, 1994 WL 591677 [ND NY, Oct. 26, 1994, Scullin, J.]).
The court’s decision in Clarke v TRW, Inc. (supra), citing Gonzalez v Mather Mem. Hosp. (147 Misc 2d 1082), does support the view held that the dismissal or discontinuance of a Labor Law § 740 claim negates the absolute effect of the waiver and may allow assertion of other claims. As the court in Clarke also observed, however, there are other Federal decisions to the contrary. In determining this issue, the court must be guided by Pipas v Syracuse Home Assn. (226 AD2d 1097), in the absence of any other binding authority. There, the plaintiff *854 asserted a Labor Law § 740 claim and other tort claims. The Appellate Division, Fourth Department, agreed that dismissal of the tort claims had been proper because of the waiver provisions of Labor Law § 740 (7) and that it also had been proper to dismiss the Labor Law § 740 claim because of the failure of proof that the alleged violation of law, rule or regulation did not present a substantial and specific danger to the public health and safety. The Court did not find that the tort claims had been revived or otherwise remained viable because of the dismissal of the Labor Law § 740 claim.
- [2] Labor Law § 740 (7) is clear and suffers from no ambiguity. It states that there is a waiver by the mere institution of an action containing a Labor Law § 740 claim. Under these circumstances, there is no arguable basis to look behind the statute for some other contrary legislative intent, and in this regard, plaintiff offers no evidence of a contrary legislative intent. Simply characterizing the waiver as harsh in such circumstances creates neither an ambiguity nor contrary legislative intent.
At this juncture, therefore, the court finds that a discontinuance of or service of an amended complaint dropping the Labor Law § 740 claim would not invoke a fresh start, nullifying the initial waiver. Similarly, granting plaintiff’s motion for leave to serve an amended complaint would not render academic or preclude an award of attorney’s fees, costs and disbursements under Labor Law § 740 (6) for that subdivision addresses the bringing of an action without basis in law or fact. Having determined that the Labor Law § 740 claim had no basis in law or fact, defendants are entitled to an award of attorney’s fees, costs and disbursements limited to only such claim. In view of the court’s grant of this relief, it would be an abuse of discretion to also award sanctions pursuant to CPLR 8303-a, assuming that provision applicable.
Although leave to serve an amended pleading should be liberally granted, particularly in the absence of prejudice (see, CPLR 3025; Zabas v Kard, 194 AD2d 784), service of an amended complaint is not the appropriate vehicle to withdraw or discontinue a cause of action. Rather, it is CPLR 3217 that controls. Whether a party should be permitted to discontinue a cause of action is committed to the discretion of the court, and while generally a party may not be compelled to litigate a claim, there may be special circumstances warranting a denial of an application for a discontinuance (see, St. Pierre v Ostreich, 123 AD2d 857). Here, there is absolutely no merit to the *855 Labor Law § 740 claim and it is obvious that plaintiff seeks to withdraw it to preserve his other causes of action, which, as stated, would not have such effect. He does not contend, and he cannot show, that there is any evidence that he may be able to obtain that will demonstrate the merit of such claim. Litigation has already been needlessly conducted regarding this claim. Under these circumstances, the court finds no valid reason to permit the reassertion of this claim at a later time.
With respect to the remainder of the proposed amended complaint, other than the addition of partners of Sunharbor as defendants, the proposed amendments would result in no new claim or allegations. Disclosure has not been completed and the action is not on the Trial Calendar. While plaintiff, perhaps, could have sought this relief earlier or avoided it entirely, there, nevertheless, is no sound basis to deny such relief.
With respect to defendants’ challenge to the addition of partners of Sunharbor on the grounds that plaintiff fails to allege the insolvency of the partnership and that defamation claims are not time barred, it is rejected. Notwithstanding the joint and several liability of partners, no personal liability may be imposed on a partner unless named as a party in the action (see, Somer & Wand v Rotondi, 219 AD2d 340). There is also no requirement to allege the insolvency of the partnership when the partnership is named as defendant, along with the individual partners {see, Beltrone v General Schuyler & Co., 223 AD2d 938). The partners plaintiff proposes to add as defendants are united in interest with the partnership {see, Hayes v Apples & Bells, 213 AD2d 1000), and, since the proposed claims against the proposed defendants partners are identical to those asserted in the original complaint, the claims relate back and are not time barred {see, CPLR 203 [b], [f]; Iannarone v Faucetta, 204 AD2d 396, lv denied 84 NY2d 845).[2]
Although not formally requested in this notice of motion, plaintiff states in his papers on these motions that he is withdrawing his fifth, sixth, seventh, eighth, ninth, tenth and twelfth causes of action without prejudice to reassert such causes of action after completion of disclosure. As stated earlier, claims may be discontinued after service of an answer only by stipulation or order of the court {see, CPLR 3217). Therefore, the unilateral statement of withdrawal is ineffective. Given the notice to defendants, the court will treat the *856 statement of withdrawal to be included within plaintiffs motion for leave to serve an amended complaint and deem it an application to discontinue such causes of action. Unlike the first cause of action, the court does not perceive any valid reason to deny such relief. Although plaintiff may not determine the withdrawal to be without prejudice, CPLR 3217 does not state that any discontinuance is without prejudice. Should plaintiff seek to reassert these causes of action in a new action (see, infra), the court at that time will pass upon the propriety and merits thereof.
■ The causes of action that remain at this juncture for the court’s review are the second, third, fourth and eleventh causes of action. Before it addresses the merit of these causes of action, the court must determine the preliminary question of the scope of the waiver under Labor Law § 740 (7), that is, whether the waiver applies to any cause of action or only those relating to the alleged retaliatory discharge itself. In Kraus v Brandstetter (185 AD2d 302), the Court clearly stated that the waiver applies only to causes of action relating to the retaliatory discharge. Thus, it found that defamation causes of action based on a newsletter published four months before the discharge were separate and independent, and not waived.
The second and third causes of action are based on alleged breach of contract, the second cause of action alleging a failure to give 30 days’ notice of termination, and the third cause of action alleging a failure to hold a hearing. Assuming these causes of action have merit, the waiver of Labor Law § 740 (7) applies and bars these causes of action. These causes of action assert a contractual basis and challenge directly the propriety of the discharge itself. Unlike Kraus v Brandstetter (supra), the second and third causes of action are not separate and independent.
Plaintiff’s defamation claims set forth in the fourth and eleventh (as amended) causes of action are based on alleged statements made to the Medical Director of Hempstead General. These alleged statements were made after plaintiff’s discharge and related to plaintiff’s application for privileges at Hempstead General. That the statutory waiver does not apply to these causes of action is consistent with Kraus v Brandstetter (supra).
The second cause of action is based on an alleged breach of an employment agreement. Specifically, plaintiff contends that Sunharbor failed to give him 30 days’ notice of termination. There is no merit to this cause of action. There is no evidence *857 that plaintiff and Sunharbor executed an employment agreement or, if there were an employment agreement, that there is a provision requiring a 30-day notice of termination. At best, there was an agreement only granting plaintiff privileges at Sunharbor without any indicia, by compensation or control, of an employer-employee relationship. Accordingly, this cause of action must be dismissed.
Unlike the second cause of action, the third cause of action does not depend on the existence of some employment agreement. It is enough that there was an agreement granting plaintiff privileges at Sunharbor and that agreement granted plaintiff the right to a hearing upon an intended discharge. If there were no applicable waiver, this cause of action would survive summary judgment. Whether the February 1996 “meeting” qualified as a hearing and whether, under the circumstances, there was a waiver by plaintiff of his right to a hearing, presents a factual question that cannot be resolved in the context of this motion. In this regard, the purpose of the “meeting” was not clearly stated and Sunharbor may have later acknowledged that it was not intended to be the required hearing.
With respect to the merits of the fourth and eleventh causes of action, defendants contend that the statements that residents had complained about plaintiffs bedside manner were not susceptible to a defamatory meaning, that, if susceptible to a defamatory meaning, the statements did not impugn plaintiffs professional ability, and that, in any event, the statements were privileged.[3]
Whether a statement is susceptible to a defamatory meaning is an issue for the court in the first instance (see, Aronson v Wiersma, 65 NY2d 592; see also, Golub v Enquirer/Star Group, 89 NY2d 1074). “[A] written statement may be defamatory ‘if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community’ (Mencher v Chesley, 297 NY 94, 100).” (Golub v Enquirer/Star Group, supra, at 1076.) “To be actionable as words that tend to injure another in his or her profession, the challenged statement must be more than a general reflection upon [plaintiffs] character or qualities. Rather, the statement must reflect on [his] performance or be incompatible with the proper conduct of [his] business (see, *858 e.g., Liberman v Gelstein, 80 NY2d 429, 436; Aronson [v Wiersma], 65 NY2d, at 594; Sanderson v Caldwell, 45 NY 398, 405 [words must ‘have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it’]).” (Golub v Enquirer I Star Group, supra, at 1076.) The court must view the statements, not in isolation, but in context, according the language its natural meaning, and determine whether the statements are reasonably susceptible of a defamatory connotation (see, Weiner v Doubleday & Co., 74 NY2d 586, 592, cert denied 495 US 930).
Ascribing to a podiatrist or other health care professional a “poor” bedside manner, though not assailing underlying medical knowledge and competency, nevertheless tends to impugn such person in his or her profession. A good bedside manner of a podiatrist or other health care professional is a quality that is attractive to patients, and it would not be unreasonable for someone to avoid the services of someone who lacks a good bedside manner. In this sense, a poor bedside manner is incompatible with the proper practice of podiatry.
While statements that residents had complained about plaintiff’s “poor” bedside manner are reasonably susceptible of a defamatory meaning, the court reaches such conclusion only in viewing the statements in isolation. The statements, however, must be viewed in context. Here, the statements were made in response to an inquiry of Hempstead General concerning plaintiff’s fitness for privileges at that medical institution. That process of inquiry and response is mandated as a means to maintain a high standard of health care and the response is protected if made in good faith (see, Public Health Law § 2805-k). Initially, Sunharbor responded only that plaintiff had been discharged but did not state the reasons. It was only in response to the explicit request of Hempstead General that Sun-harbor stated the following in writing:
“As per our discussion, Dr. Rotwein is in the process of having his privileges at Sunharbor Manor revoked. As I explained, we are not challenging his podiatric medicine. We had a few cases where residents and their families were not pleased with his bedside manner. We requested his resignation which he did not wish to do.
“Again, the reason for his dismissal is due to his relationship with staff, families and residents and in no way is meant as a reflection upon his podiatric medicine.”
This was hardly a statement motivated by any desire to undermine plaintiff’s opportunity to obtain privileges at Hemp- *859 stead General. Rather, Sunharbor clearly was emphasizing that it had no criticism of plaintiffs competence in rendering podiatric care. Even the tone with respect to plaintiffs bedside manner was mild. In this context, the court finds that the statements were not reasonably susceptible to a defamatory meaning.
As stated, Sunharbor’s statements in response to the inquiry of Hempstead General are protected by the privilege afforded by Public Health Law § 2805-k, provided the statements were made in good faith. Other than arguing that the statements were false, plaintiff offers no evidence of malice or bad faith. The falsity of the statements, if proved, alone does not show bad faith in the absence of some evidence of knowledge of the falsity or a reckless disregard for the truth. In this regard, Sunharbor submits some correspondence containing complaints regarding plaintiff’s bedside manner. Such correspondence, though not in admissible form to prove the truth of the content, is sufficient to show that Sunharbor had a basis for the statements made to Hempstead General.
At the core of any defamation claim is proof of the falsity of the alleged defamatory statements. Since the correspondence of the residents is not in admissible form and no affidavits of the complaining residents are submitted, the truth of the statements is not established. Equally deficient, however, is plaintiff’s proof. He fails to meet his burden of showing that the statements were false (see, Dos v Scelsa & Villacara, 200 AD2d 705, 707). His averment that the statements were false is not enough (see, Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 382, cert denied 434 US 969).
Accordingly, plaintiff’s motion is granted to the extent that he is permitted to discontinue the fifth, sixth, seventh, eighth, ninth and tenth causes of action, and all allegations of the eleventh cause based on statements other than that residents had complained about plaintiff’s “poor” bedside manner, without prejudice to commencing a new action and is denied in all other respects. Defendant’s motion is granted and defendants are entitled to summary judgment dismissing the first, second, third, fourth and eleventh (as amended) causes of action.

. Apparently, the written request was preceded by an oral conversation in which Sunharbor contends it declined to provide any information orally.

. In any event, whether the partners may be properly joined in light of the court’s determination of the merits of the fourth and eleventh causes of action (see, infra) is academic.

. The slander and libel claims are based on essentially the same statements. Therefore, any reference to the content of written statements should be deemed to apply to the alleged oral statements as well.