Owitz v Beth Israel Med. Ctr. (2004 NY Slip Op 50046(U))

[*1]

Owitz v Beth Israel Med. Ctr.

2004 NY Slip Op 50046(U)

Decided on January 29, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 29, 2004

Supreme Court, New York County
 DAVID OWITZ, Plaintiff,
against
BETH ISRAEL MEDICAL CENTER and JOEL KIRSCHNER, Defendants.
Index No.: 600331/03

SHIRLEY WERNER KORNREICH, J.
Before the Court are a motion by defendant Beth Israel Medical Center ("BIMC") pursuant to CPLR §3211(a)(7) to dismiss the complaint insofar as asserted against it, as well as a cross-motion by plaintiff to "amend" his complaint under CPLR §3025(b) by discontinuing his third cause of action.
I. FACTUAL AND PROCEDURAL BACKGROUND:
According to the allegations in the original Verified Complaint, plaintiff David Owitz ("plaintiff" or "Owitz") is a Cardiovascular Perfusionist who has been employed in the field of cardiovascular perfusion for twelve years, six of them with BIMC. During plaintiff's tenure with BIMC, defendant Joel Kirschner ("Kirschner") was plaintiff's supervisor. According to plaintiff, while plaintiff was "an exemplary employee," Kirschner was "negligent" in performing his job, displayed "poor" perfusion skills and techniques, required his students to perform the "menial tasks" of his job rather than learning proper perfusion methodology, and did minimal work during regular business hours so that he could stay late and collect "extra overtime pay." In addition to the foregoing, plaintiff charges that Kirschner used his BIMC computer to view pornographic websites, used his laptop to chat in adult internet chatrooms during work hours, and sent sexually explicit emails from his home computer to BIMC employees, including plaintiff, even after plaintiff had protested and asked him to stop.
Plaintiff relates that in July and August 2002, he complained to Kirschner about his behavior, advising Kirschner that his conduct was "unacceptable." According to plaintiff, Kirschner warned Owitz not to repeat any of his allegations to management, but before Owitz had a chance to disobey him, Kirschner fired him. Kirschner discharged Owitz by telephoning him on his cell phone while Owitz was driving home from work on August 16, 2002. Owitz contends that Kirschner concealed the real retaliatory reason for the firing by lying about Owitz's work performance. That is, Kirschner falsely accused Owitz of repeatedly failing to carry out a required quality control procedure on a piece of biomedical equipment critical to monitoring patient care, and of falsifying hospital records to indicate that he had in fact completed the omitted procedure. Kirschner allegedly also reported Owitz's firing and his fabricated reason [*2]therefor to the American Board of Cardiovascular Perfusion ("ABCP"). Owitz contends that he informed BIMC in a letter dated August 20, 2002 of Kirschner's misconduct and of Kirschner's retaliatory motivations for discharging Owitz. However, BIMC had not reinstated him, in violation of its official "policy prohibiting retaliation against anyone reporting harassment."
Owitz raises four causes of action in his original Verified Complaint, as follows: (1) against both defendants, for violations of the New York State Executive Law Sections 290 et seq. (the "Human Rights Law"), in that Kirschner sexually harassed Owitz and then, when Owitz threatened to report him, retaliatorily fired him, with BIMC's acquiescence; (2) against both defendants, for violations of the New York City Administrative Code, Sec. 8-107 (the municipal equivalent of the State's "Human Rights Law"), in that "[d]efendants unlawfully terminated plaintiff for complaining about sexual harassment in the workplace and threatening to report the misconduct to higher authorities at BIMC"; (3) against both defendants, for violations of New York Labor Law Sec. 740 [FN1], in that "Kirschner's illegal, unethical and negligent activities and practices created a substantial danger to the public health and safety," and because when plaintiff "notified Kirschner of his violation of the law and threat to the safety of the public and the hospital," "Owitz was terminated by BIMC because of his threat to disclose Kirschner's activities to higher authorities at the hospital"; and (4) against Kirschner alone, for defamation, in that Kirschner had reported to both BIMC and the ABCP that Owitz had falsified quality control data without performing the required tests, even though Kirschner knew that this allegation was untrue.
After interposing its answer, defendant BIMC brought on the instant motion to dismiss the complaint, arguing as follows: Plaintiff's third cause of action really states a claim under New York's Labor Law §740 "the Whistleblower Act" even though the Act is not invoked by name. However, such a claim cannot be maintained where, as here, the plaintiff has failed to identify what "specific law, rule or regulation" Kirschner violated by his alleged activities, and/or how Kirschner's alleged behavior "presented a substantial and specific danger to the public health or safety." In addition, BIMC argues, the "election of remedies" provision in Labor Law §740 provides that a litigant who brings a claim under the Whistleblower Act perforce waives any and all rights and remedies otherwise available to him, "arising from the same course of conduct," "under any other contract, collective bargaining agreement, law, rule or regulation or under the common law." Accordingly, BIMC submits, plaintiff's claims under the New York State and New York City Human Rights laws must be dismissed.
Plaintiff has opposed BIMC's motion and has cross-moved to "amend" his complaint by withdrawing his third cause of action, which he concedes is a Labor Law §740 claim. It is plaintiff's position that once his Whistleblower claim has been discontinued, there is no impediment to his pursuit of his remaining causes of action.
II. DISCUSSION:
A. Plaintiff's Original Complaint:
1. Plaintiff's original Labor Law §740 claim is not viable:
Labor Law §740(2) provides, in relevant part:
[*3]
Prohibitions. An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:
(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety....
The Courts have held that it is essential to the viability of a Labor Law §740 claim that the plaintiff specify the law, rule or regulation that has actually been violated by defendants' behavior, and that he describe how defendants' activities have endangered the health or safety of the public. If the plaintiff fails to satisfy one or both of these prerequisites, the Court must dismiss the Labor Law §740 cause of action. See, e.g., Bordell v. General Electric Co., 88 N.Y.2d 869, 871 (1996) (affirming dismissal of plaintiff's §740 claim where plaintiff conceded that former employer was not actually in violation of a specific law, rule or regulation); Blumenreich v. North Shore Health Systems, Inc., 287 A.D.2d 529, 530 (2d Dept. 2001) (§740 claim dismissed where "plaintiff failed to plead a violation of any law, rule or regulation with the requisite particularity and specificity" necessary to support a viable claim); Pail v. Precise Imports Corp., 256 A.D.2d 73, 74 (1st Dept. 1998) (plaintiff's allegation that defendant had violated "its Federal and State tritium distribution licenses" was too conclusory to meet §740's "actual violation" requirement); Connolly v. Macklowe Estate Co., 161 A.D.2d 520 (1st Dept. 1990) (§740 claim dismissed for failure to indicate which law, rule or regulation had been violated, and how its breach constituted a "substantial and specific" danger to public health or safety); Remba v. Federation Employment and Guidance Serv., 149 A.D.2d 131, 138 (1st Dept. 1989), aff'd. 76 N.Y.2d 801 (1990) ("plaintiff's statement that improper billing practices constitute a substantial and specific danger to public health and safety, without any supporting facts, is legally deficient and will not support a cause of action" under Labor Law §740).
Here, plaintiff does not dispute that he failed to identify which specific law, rule or regulation it was that Kirschner violated. Owitz has also failed to indicate how Kirschner's activities posed "a substantial and specific danger to the public health and safety." Accordingly, under the authorities cited above, plaintiff's Labor Law §740 claim is inadequately pleaded.
2. Whether plaintiff waived other remedies by instituting an action based on a Labor Law §740 Claim in his original complaint:
Labor Law §740(7) declares that

Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation [FN2] or under the common law.
[*4]
On its face, this provision seems to contradict itself. However, the simplest reading that harmonizes the two halves would appear to be that (a) an aggrieved employee is not prevented by the enactment of this statute from calling his employer to account under any of the conventional litigation and/or grievance methods previously available to him. (b) However, if he elects to bring an action under §740, he is deemed to have waived other remedies.
Although the wording of the statute suggests that a §740 plaintiff's waiver of other remedies is absolute, the Courts have limited this waiver to all claims that "arise out of the same acts" as those that gave rise to the Labor Law §740 claim, and/or that "relate to" the retaliatory action(s) on which the §740 claim is based. See, e.g., Bordan v. North Shore University Hospital, 275 A.D.2d 335, 336 (2d Dept. 2000) (breach of contract claim properly dismissed as arising from same facts as those on which §740 claim was based); Feinman v. Morgan Stanley Dean Witter, 193 Misc.2d 496, 497 (Sup. Ct., N.Y. Co., 2002 (plaintiff's age discrimination claim under N.Y. Executive Law §296 dismissed because it was related to same set of facts as those underlying his retaliatory discharge); Rotwein v. Sunharbor Manor Residential Health Care Facility, 181 Misc.2d 847 (Sup. Ct., Nassau Co. 1999) (breach of employment contract claim arose out of same facts as §740 retaliatory firing claim); cf. Kraus v. Brandstetter, 185 A.D.2d 302, 303 (2d Dept. 1992) (plaintiff's defamation claim not barred by her §740 action, since defamation was separate wrong which predated retaliatory discharge by four months).
In the case at bar, all of plaintiff's causes of action "arise out of the same acts" as those that gave rise to the Labor Law §740 claim, and all are "related to" the retaliatory action(s) on which the §740 claim is based. For example, in each cause of action plaintiff "repeats and realleges" everything that went before. Even more significantly, every cause of action reads exactly like a §740 claim. Thus, cause of action #1 (an alleged violation of the State Human Rights Law) charges that "[d]efendants unlawfully terminated plaintiff for complaining about sexual harassment in the workplace and threatening to report the misconduct to higher authorities at BIMC." See Complaint at para. 30; see also paras. 27, 28, 29 and 31. Cause of action #2 (claiming a violation of the City Human Rights Law) contains identical language in paras. 37, 34, 35, 36 and 38. Finally, in his fourth cause of action, plaintiff contends that the reasons Kirschner gave to BIMC and ABCP for firing Owitz were false and defamatory. Since all of Owitz's claims thus arise out of or relate to the same underlying claim of wrongful discharge, causes of action #1, #2 and #4 are barred by the waiver provision of Labor Law §740(7).
The case relied upon by plaintiff Collette v. St. Luke's Roosevelt Hospital, 132 F.Supp.2d 256 (S.D.N.Y. 2001) does not require a different result. The Court in Collette concluded that it would limit the plaintiff's §740 waiver to "claims that duplicate or overlap the statutory remedies for retaliation on account of whistleblowing activity alone," "as opposed to claims arising from an entire course of conduct (incidents not related to whistleblowing), even though such claims might also have led to the alleged harm." Id. at 272-274. Here, even if the Collette Court's very narrow interpretation of the §740 waiver were to be adopted, the Court would be obliged to dismiss Owitz's Amended Complaint, since all of its causes of action "duplicate or overlap the statutory remedies for retaliation on account of whistleblowing activity [*5]alone."[FN3]
B. Whether Plaintiff May Amend His Complaint:
The Fourth Department has held that the mere institution of a Labor Law §740 claim triggers the statute's election of remedies provision, and the waiver remains effective even if the §740 claim is dismissed. See Pipas v. Syracuse Home Association, 226 A.D.2d 1097 (4th Dept. 1996), lv. den. 88 N.Y.2d 810 (1996) (affirming dismissal of §740 claim upon defendant's motion for summary judgment for plaintiff's failure to raise a triable issue of fact, and also affirming dismissal of plaintiff's related tort claims based on §740's election of remedies provision).
By parity of reasoning, a plaintiff may not tacitly concede that his Labor Law §740 claim has no merit and seek to withdraw it in order to preserve his other causes of action, where all claims arose out of the same course of conduct and concern his alleged retaliatory discharge. See Rotwein v. Sunharbor Manor Residential Health Care Facility, supra, at pp. 853-855 (Labor Law §740[7] waiver is triggered when action is instituted, and waiver may not be voided or nullified by a later discontinuance or dismissal of §740 claim prior to judgment). As the Court in Rotwein ruled, under circumstances like those presented here, the discontinuance of a §740 claim or the service of an amended complaint dropping the §740 claim "would not invoke a fresh start, nullifying the initial waiver." Id. at 854. The Court explained that [the second, "except that" clause of]:

Labor Law §740(7) is clear and suffers from no ambiguity. It states that there is a waiver by the mere institution of an action containing a Labor Law §740 claim. Under these circumstances, there is no arguable basis to look behind the statute for some other contrary legislative intent, and in this regard, plaintiff offers no evidence of a contrary legislative intent. Simply characterizing the waiver as harsh in such circumstances creates neither an ambiguity nor contrary legislative intent.
Id. at 854, emphasis supplied. Other state and federal Courts have similarly held that the mere commencement of an action with a §740 claim triggers an irrevocable waiver of any other related claims. See, e.g., Fihma v. Salant Corp., N.Y.L.J., April 23, 1997, at p. 25 (Sup. Ct., N.Y. Co. 1997), appended as Exhibit A to BIMC's Reply Memorandum (plaintiff waived related claims by commencing action under Labor Law §740, notwithstanding subsequent withdrawal of whistleblower claim); McGrane v. Reader's Digest Assoc., Inc., 863 F.Supp. 183, 185 (S.D.N.Y. 1994), aff'd. 60F3d811 (2d Cir. 1995) (all other claims arising out of complained-of termination are barred by the commencement of a §740 action); United States ex. rel. Mikes v. Straus, 846 F.Supp. 21, 24 (S.D.N.Y. 1994) ("Where competing state claims are at stake, subsection 7 decrees that mere invocation of Labor Law §740 alone is enough to vitiate any other claims [*6]irrevocably"). Although the foregoing authorities are not binding on this Court, the Court finds their reasoning to be persuasive.
Here, plaintiff is cross-moving to "amend" his complaint by dropping his original third cause of action. The remainder of Owitz's "Amended Complaint" is identical to his original Complaint (as Owitz himself underscores in arguing that defendants are not prejudiced by the amendment) viz., he seeks compensation for damages he has suffered by defendants' alleged violations of his State and City Human Rights, as well as for damage to his reputation, all caused by his retaliatory firing. Under the circumstances, although "leave to amend a pleading should be freely given upon such terms as may be just" [CPLR §3025(b)], it is inappropriate to grant leave to amend when the amendment would not survive a motion to dismiss, inter alia because plaintiff's three remaining causes of action simply reiterate his §740 claim in other forms . See, e.g., Clarke v. TRW, Inc., 921 F.Supp. 927, 932 (N.D.N.Y. 1996); see also Ramsey v. H.M.S., Inc., 198 A.D.2d 868 (4th Dept. 1993), lv. den. 83 N.Y.2d 754 (1994) (motion to amend should be denied where amended pleading lacks merit). By parity of reasoning, it would be an improvident exercise of discretion under CPLR §3217(b) (under whose rubric the instant motion should arguably have been made) to allow plaintiff to discontinue his third cause of action while permitting the remaining claims to proceed, inter alia because plaintiff's "Amended Complaint" is on its face an attempt to circumvent the requirements and prohibitions of Labor Law §740.The authorities invoked by plaintiff are not persuasive. For example, the Court in Gonzalez v. John T. Mather Memorial Hospital, 147 Misc.2d 1082 (Sup. Ct., Suffolk Co. 1990), in fact held that plaintiff's service as of right of an amended complaint (in which she dropped her Labor Law §740 claim while restating her breach of contract and violation of Executive Law §296 claims) mooted defendant's pre-answer CPLR §3211 motion. The Court's observation that, had defendant's motion not been mooted the Court would have been "inclined to allow plaintiff to replead," is therefore pure dictum. In any event, it is not clear from the published Opinion in Gonzalez whether there, as here, the remaining causes of action merely duplicated the "retaliatory firing" claim underlying the §740 cause of action or were independent of it. Accordingly the case, in addition to not being controlling, offers little guidance. Similarly, Clarke v. TRW, Inc., Civ. A. No. 93-CV-1524FJS, 1994 WL 591677 (N.D.N.Y. 1994), bases its discussion of the scope of Section 740(7)'s "waiver" provision on the dictum in Gonzalez, the significantly distinguishable case of Kraus v. Brandstetter, supra, and an outdated (1988) Practice Commentary that McKinney's no longer publishes with Labor Law §740. Accordingly it is
ORDERED that plaintiff's cross-motion to amend his complaint is denied; and it is further
ORDERED that defendant BIMC's motion to dismiss plaintiff's first through third causes of action is granted; and it is further
ORDERED that the Court, on its own motion, dismisses plaintiff's fourth cause of action, as not maintainable as a matter of law; and it is further
ORDERED that the complaint is therefore dismissed in its entirety, with prejudice, with costs and disbursements to defendant BIMC as taxed by the Clerk of the Court; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
The foregoing constitutes the Decision, Order and Judgment of the Court.
[*7]
Date: January 29, 2004 
New York, New York
SHIRLEY WERNER KORNREICH
Decision Date: January 29, 2004
Footnotes

Footnote 1:Plaintiff does not specifically mention Labor Law §740 in his Complaint, but he concedes throughout his papers that §740 is at issue in his third cause of action.

Footnote 2:"Law, rule or regulation" is defined in §740(1)(c) as "includ[ing] any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance."

Footnote 3:The Collette Court was additionally concerned that a broad reading of §740's waiver could result in "an effort by New York to condition a state law right on the waiver of arguably unrelated federal rights [which] would raise serious constitutional questions." Id. at 265. Such concerns are not at issue here, where, in contrast to Collette, no federal anti-discrimination statutes have been invoked.